EXHIBIT C

STATEMENT OF P.O. LOU TOTH

CONDUCTED BY INVESTIGATOR NEUBECK and
SUPERVISING INVESTIGATOR MARK HITT

ON JANUARY 7, 2013 AT 2156 HOURS

AT AREA SOUTH, 727 EAST 111TH, CHICAGO, ILLINOIS

1059373
#52

Chatman v. City, et al., 13 C 5697
FCRL 000594

| | | |
|---|---|---|
| 1 | NEUBECK: | This is the audio recorded statement of Officer |
| 2 | | Lou Toth, Star number 1-4-6-3-0 regarding Log |
| 3 | | number 1059373 U#13-02.   Today's the 7th of |
| 4 | | January 2013.  It's now approximately 2156 hours. |
| 5 | | This statement is being taken at uh Area South |
| 6 | | located at 727 East 111th.   I'm Investigator |
| 7 | | Daniel Neubeck, N-E-U-B-E-C-K, Star number 1-5-4. |
| 8 | | Um, Officer Toth are you accompanied by counsel |
| 9 | | or representative of your choosing? |
| 10 | P.O.TOTH: | Yes. |
| 11 | | |
| 12 | NEUBECK: | Okay.   Counsel can you please state and spell |
| 13 | | your name for the record? |
| 14 | STARR: | Yeah FOP Attorney Sean Starr, S-E-A-N, S-T-A-R-R. |
| 15 | | |
| 16 | NEUBECK: | Could everyone else in the room please identify |
| 17 | | themselves for the record? |
| 18 | FARRELL: | John Farrell, J-O-H-N, F-A-R-R-E-L-L, I'm an FOP |
| 19 | | Field Rep. |
| 20 | HITT: | Mark Hitt, H-I-T-T, Star number 21 Supervising |
| 21 | | Investigator. |
| 22 | | |
| 23 | NEUBECK: | All right sir, um, Officer Toth what's your |
| 24 | | employee number? |
| 25 | P.O.TOTH: | ████████ |
| 26 | | |
| 27 | NEUBECK: | And what's your age and date of birth? |
| 28 | P.O.TOTH: | Uh I'm ███ years of age.   Uh birth date is ████ |
| 29 | | ███████████ |
| 30 | | |
| 31 | NEUBECK: | What's your current unit sir? |
| 32 | P.O.TOTH: | Four. |

Chatman v. City, et al., 13 C 5697
FCRL 000595

1
2  NEUBECK:  Four. And how long have you been assigned to that
3                  unit?
4  P.O.TOTH: Uh currently three months maybe.
5
6  NEUBECK:  Okay and prior to the uh 4th District where were
7                  you assigned?
8  P.O.TOTH: Uh gang enforcement.
9
10 NEUBECK:  And how long were you there?
11 P.O.TOTH: Three years.
12
13 NEUBECK:  Okay.  Prior to the gang enforcement, where were
14                  you assigned?
15 P.O.TOTH: Uh 4th District Gangs.
16
17 NEUBECK:  Okay and how long were you assigned there?
18 P.O.TOTH: Um eight years maybe.  Between Tact and Gangs.
19
20 NEUBECK:  Okay and prior to that where were you assigned
21                  sir?
22 P.O.TOTH: Um, 5th District.
23
24 NEUBECK:  And how long were you in the 5th District?
25 P.O.TOTH: Uh maybe like two years.
26
27 NEUBECK:  Okay.  And prior to the 5th District where were
28                  you assigned?
29 P.O.TOTH: I started in 5.
30
31 NEUBECK:  Okay so the Academy?
32 P.O.TOTH: The Academy yeah prior to that.

Chatman v. City, et al., 13 C 5697
FCRL 000596

1

2    NEUBECK:    Okay. All right. Um, do you understand that

3                you're bein' questioned as a witness in this

4                investigation. That no allegations of misconduct

5                have been made against you at this time?

6    P.O.TOTH:  Yes.

7

8    NEUBECK:    And are you prepared to give a statement at this

9                time?

10   P.O.TOTH:  Uh yes I am. But this statement is not being

11               given voluntarily but under duress. I'm only

12               givin' this statement at this time because I know

13               that I will loose my job if I refuse.

14

15   NEUBECK:   Okay sir. Are you aware that this statement has

16               the standing of an off, an official Department

17               report and that any falsification of any answer

18               to any question would be in direct violation of

19               Department rules and regulations?

20   P.O.TOTH:  Yes.

21

22   NEUBECK:   Given that, I would like to remind you that

23               failure to provide a complete and accurate

24               statement could result in a finding of a

25               violation of Rule 14 and disciplinary action up

26               to and including separation. Do you understand?

27   P.O.TOTH:  I do.

28

29   NEUBECK:   The digital recording device that's bein' used to

30               record your statement is very sensitive will

31               pickup any whispered conversations that occur in

32               its proximity. Un if you'd like to request a

Chatman v. City, et al., 13 C 5697
FCRL 000597

Confidential Pursuant to Protective
Order Entered in 13 C 5697

1    break during the interview you can do so verbally

2    by stating you'd like a break or non-verbally um,

3    just by raising your hand okay?

4    P.O.TOTH: Okay.

5

6    NEUBECK:  All right sir, what was your duty status on the

7    uh 7th on today's date the 7th of January 2013

8    approximately 1347 hours?

9    P.O.TOTH: Uh I was on duty.

10

11    NEUBECK:  Okay and what beat were you working?

12    P.O.TOTH: Uh 4-6-3 Eddie.

13

14    NEUBECK:  Okay and is that your normal beat of assignment?

15    P.O.TOTH: It is.

16

17    NEUBECK:  Okay.  Are there any special details to that

18    beat?

19    P.O.TOTH: Uh no we're a tactical unit.

20

21    NEUBECK:  Okay.  Um, were you familiar with the area where

22    this incident took place?

23    P.O.TOTH: Yes I am.

24

25    NEUBECK:  And how are you familiar with that area?

26    P.O.TOTH: Um, just through uh personal experience through

27    law enforcement in a lotta my time is spent in

28    that area.

29

30    NEUBECK:  Okay.  And uh were you workin' alone or with a

31    partner?

32    P.O.TOTH: With a partner.

Chatman v. City, et al., 13 C 5697
FCRL 000598

1

2   NEUBECK:   And uh can you identify your partner for the
3              record please?

4   P.O.TOTH: Uh Police Officer Kevin Fry.

5

6   NEUBECK:   And can you spell his last name?

7   P.O.TOTH: F-R-Y I believe.

8

9   NEUBECK:   Do you know his star number?

10  P.O.TOTH: Uh no I don't.  He's not my regular partner.

11

12  NEUBECK:   Okay.  That's the next question I was gonna ask
13             you how often do you work with Officer Fry?

14  P.O.TOTH: Um, today woulda been maybe a handful of times.
15             It was second day this week.

16

17  NEUBECK:   Second day this week that you worked with him?

18  P.O.TOTH: Yes.

19

20  NEUBECK:   Okay.  Um, and what type a squad car were you
21             guys patrolling in?

22  P.O.TOTH: An unmarked.

23

24  NEUBECK:   Unmarked car.  Um, a sedan, a Crown Vic?

25  P.O.TOTH: Crown Vic.

26

27  NEUBECK:   Okay.  And what color was it?

28  P.O.TOTH: Uh it's a silverish gray.

29

30  NEUBECK:   Okay and where were seated inside the vehicle?

31  P.O.TOTH: I was the driver.

32

Chatman v. City, et al., 13 C 5697
FCRL 000599

1  NEUBECK: You were the driver. And Officer Fry was seated
2           in the front passenger seat?
3  P.O.TOTH: That's correct.
4
5  NEUBECK: And you were the only two officers inside the
6           vehicle?
7  P.O.TOTH: That's correct.
8
9  NEUBECK: Okay.  Can you describe what you were wearing
10          today?
11 P.O.TOTH: Um, I had a dark colored coat.  I also had a uh
12           police vest that has a sewn on star with the star
13           number it says Chicago Police as well as my name
14           uh unit designator and there's a patch on the
15           back that says police.
16
17 NEUBECK: Okay.  Um, and when you said you were wearin'
18          your police vest, your, your protective vest,
19          your bullet proof vest?
20 P.O.TOTH: Yes inside a carrier.
21
22 NEUBECK: Okay.  And you had your star displayed on that
23          vest?
24 P.O.TOTH: That's correct.
25
26 NEUBECK: Okay.  And how 'bout your partner, what was he
27          attired in do you recall?
28 P.O.TOTH: Uh roughly the same.  Uh dark colored coat with
29           a, a vest that has uh has a lot of stuff on the
30           outside of it.  Uh as well as identifiers.
31

Chatman v. City, et al., 13 C 5697
FCRL 000600

1  NEUBECK:  Okay.  Um, and what time did you start your tour
2           of duty today?
3  P.O.TOTH: Uh 0930 hours.
4
5  NEUBECK:  Okay and is that your typical start time?
6  P.O.TOTH: Yes it is.
7
8  NEUBECK:  And what time do you typically work till?
9  P.O.TOTH: Till 1830.
10
11 NEUBECK:  Okay.  All right.  Um, describe your primary duty
12           weapon that you were carryin' on today's date?
13 P.O.TOTH: Um, --
14
15 NEUBECK:  At the time of this incident?
16 P.O.TOTH: I have a 9 millimeter SIG.
17
18 NEUBECK:  Okay.  Um, was your weapon in an authorized
19           holster?
20 P.O.TOTH: Yes it was.
21
22 NEUBECK:  Okay.  And what is your primary shooting hand?
23 P.O.TOTH: Right.
24
25 NEUBECK:  Right hand. And where was your holster located?
26 P.O.TOTH: On my right side.
27
28 NEUBECK:  Okay was your weapon fully loaded with authorized
29           ammunition?
30 P.O.TOTH: Yes it is.
31

Chatman v. City, et al., 13 C 5697
FCRL 000601

```
1   NEUBECK:   Um, what else uh were you carryin' any other
2              weapons or less lethal weapons on your person?
3   P.O.TOTH:  Uh I have a collapsible baton otherwise known as
4              a ASP.  I also have a can of OC spray.  Um, two
5              sets of cuffs and uh backup uh magazines.
6
7   NEUBECK:   Okay.  Were you carryin' any other uh firearms?
8   P.O.TOTH:  No.
9
10  NEUBECK:   Okay.  During your tour of duty uh on today's
11             date, the 7th of January 2013 were you involved in
12             an incident that resulted in the shooting of a
13             subject now known as uh ████ ████████████,
14             ████████████?
15  P.O.TOTH:  Yes.
16
17  NEUBECK:   Can you relate the details of your involvement in
18             this, in that incident to us please?
19  P.O.TOTH:  Um, it initially started with observing a silver
20             Charger um, fail to completely stop at a stop
21             sign at 75th and Essex.  Uh that same Charger
22             turned uh left and continued westbound on 75th
23             Street from Essex.  Um, I think approached that
24             vehicle with my vehicle in an attempt to gain the
25             license plate uh and I ran the license plate via
26             PDT in my car.  And uh that information from the
27             PDT returned that the car was clear.  Registered
28             to an individual in Milwaukee.
29
30  NEUBECK:   Okay.  And going back to your, to the vehicle you
31             stated that it was an unmarked gray Crown
32             Victoria?
```

Chatman v. City, et al., 13 C 5697
FCRL 000602

1   P.O.TOTH: My vehicle?

2

3   NEUBECK:  Yes.

4   P.O.TOTH: Yes.

5

6   NEUBECK:  Okay.  And uh you had a PDT in that vehicle?

7   P.O.TOTH: Yes.

8

9   NEUBECK:  Did you have in-car camera?

10  P.O.TOTH: No.

11

12  NEUBECK:  Okay.  So you run the license plate and the
13            vehicle comes back clear.

14  P.O.TOTH: That's correct.

15

16  NEUBECK:  And then uh what, what, what occurs?

17  P.O.TOTH: Um the Charger (someone coughs) continues
18            westbound on 75th Street.  I in turn turn left and
19            go southbound on Crandon from 75th.  During that
20            time I hear on the uh an OEMC dispatch of a
21            battery in progress 76th and Essex um, involving
22            teens fighting in the street that exited from a
23            silver Charger.

24

25  NEUBECK:  Okay.  Um, So do you actually make it to that
26            scene?

27  P.O.TOTH: Uh no prior to making it to that scene, uh OEMC
28            updated that call to now a uh robbery in
29            progress.  Um, it was that carjacking.  And uh it
30            involved a silver Charger.  Um, at which time I
31            got on the radio and asked if the silver Charger
32            was the one that was actually carjacked.

Chatman v. City, et al., 13 C 5697
FCRL 000603

1

2  NEUBECK:    Okay.

3  P.O.TOTH:   Um, the OEMC did, in fact return the information

4             that that was the car that was carjacked and that

5             it, a silver Charger was carjacked from the

6             victim and that it contained a Wisconsin plate.

7

8  NEUBECK:    Okay.  So at that time, uh you put two and two

9             together realized that the vehicle that you just

10            ran was possibly the vehicle that was involved in

11            this carjacking?

12 P.O.TOTH:   Correct.

13

14 NEUBECK:    Okay.  Then what, what do you guys do --

15 P.O.TOTH:   I made my way back to 75th, turned left and

16            continued westbound to in an attempt to catch up

17            to that vehicle.  Um, at which time we uh saw the

18            vehicle stopped in traffic at a stop light at 75th

19            and Jeffrey.

20

21 NEUBECK:    Okay.  At any time during that time did you

22            relate back to OEMC that the vehicle that you ran

23            uh was possibly involved in this?

24 P.O.TOTH:   Uh it was at the time of seein' the car stopped

25            in traffic and Jeffrey and 75th that we uh, my

26            partner came over the air and said we were

27            actually behind that vehicle right now.

28

29 NEUBECK:    Okay.  So it woulda been just east of Jeffrey on

30            75th where you saw the vehicle?

31 P.O.TOTH:   Stopped at a light, yes sir.

32

Chatman v. City, et al., 13 C 5697
FCRL 000604



 1  NEUBECK:  Stopped at the light.
 2  P.O.TOTH:  Correct.
 3
 4  NEUBECK:  And then go ahead.
 5  P.O.TOTH:  Um, I pulled my vehicle up to the what would be
 6            the passenger side of the silver Charger. Um, I
 7            then just a lil bit passed the front end of the
 8            Charger itself on the passenger side. I opened
 9            my car door, exited my uh vehicle and observed a
10            uh ████████ individual driving behind the uh
11            wheel of the Charger.
12
13  NEUBECK:  Okay. Um, did when, when the OEMC relay,
14            related, related to you um, that there was a
15            carjacking, uh did they, did they say how the car
16            was taken or anything like that? Um, how, what,
17            I guess what force was used to obtain the
18            vehicle? Or was any of that information related
19            over the air?
20  P.O.TOTH:  Oh I don't recall if there was or not.
21
22  NEUBECK:  Okay. All right. So you, so you pull up next to
23            the vehicle and you exit and observe a ████████
24            seated in the driver's seat?
25  P.O.TOTH:  Uh yes, when I pulled up, it was at uh the, the
26            Charger itself was actually behind a car that was
27            stopped by the light as well as there was a some
28            other cars that were behind the Charger itself.
29
30  NEUBECK:  Okay. So it's in between two cars at the light.
31  P.O.TOTH:  Stopped at the light, correct.
32

Chatman v. City, et al., 13 C 5697
FCRL 000605

1  NEUBECK:    Okay.   Um, and that individual, there's one
2              single occupant inside the Charger?
3  P.O.TOTH:   Yes.
4
5  NEUBECK:    All right what takes place from there?
6  P.O.TOTH:   Um being that I believe that this was the car
7              that was taken in the carjacking, it matched the
8              description as well as the plate.  Um, I ordered
9              the individual in the car to put ▮▮hands up as
10             well as identify myself as the police because
11             through my experience I believe that this
12             individual was armed because uh there's been a
13             lot of carjackings that involve weapons.   Um
14             while continuing to identify myself as the police
15             and continuing to tell ▮▮▮ to put ▮▮ hands up,
16             uh the individual put one, ▮▮▮ one hand up which
17             I believe was his right and proceeded to go to
18             the floor of the car inside with ▮▮ left hand.
19
20 NEUBECK:    Okay.   And I'm sorry maybe I missed it, did you
21             say that you had your, you, you unholstered your
22             firearm at this point or you did not?
23 P.O.TOTH:   It, my firearm was (inaudible)
24
25 NEUBECK:    Okay.   And you were orderin' the subjects outta
26             the car.   You announced your office and ordered
27             the subject outta the vehicle?
28 P.O.TOTH:   I never ordered 'em out, I just told 'em to put
29             ▮▮▮ hands up.
30
31 NEUBECK:    Put ▮▮▮ hands up.
32 P.O.TOTH:   Yes.

Chatman v. City, et al., 13 C 5697
FCRL 000606

1

2  NEUBECK:  Okay.  All right.  Um, and what was your partner
3            doin' at this point do you recall?
4  P.O.TOTH:  Uh my focus was on the driver at the time.

5

6  NEUBECK:  Okay.  What transpires from there?
7  P.O.TOTH:  Um, I now am moving, I, I wanna get out of the
8            front of the car, front of the Charger cuz I'm in
9            front of it at this point.     I move to the
10           driver's side and I uh, um, as I'm continuing to
11           approach the driver's side, ██s still reaching
12           toward the bottom of the car which I assume is
13           ██'s picking up a weapon at this time, being that
14           it's involved in a carjacking.     Um, as I'm
15           getting closer to the driver's side door, uh the
16           door flies open, blocking my path.     Uh and ██
17           exited the vehicle and flees.

18

19 NEUBECK:  Okay.  Which direction does ██ flee?
20 P.O.TOTH:  Uh it was what would be southeast bound toward
21           the sidewalk.

22

23 NEUBECK:  Okay.
24 P.O.TOTH:  The south side of uh 5th.

25

26 NEUBECK:  Okay.  Does ██ say anything?   Are you still
27           givin' ██ orders what's --
28 P.O.TOTH:  Um as ██'s fleeing, I'm tellin' 'em to stop and
29           ██'s looking directly at me.  And I'm looking
30           directly at ██ like I'm doin' to you right now.
31           Right in ██ eye.

32

Page 14 of 25

1   NEUBECK:   Okay.

2   P.O.TOTH:  Um, ███ s running now toward the sidewalk and goes
3              in between two parked cars.  Um, I'm --

4

5   NEUBECK:   So ███ runs south towards the sidewalk?

6   P.O.TOTH:  Towards the sidewalk, yes sir.  Uh ███ splits the
7              parked cars and I'm right behind ███.  Uh ███ then
8              switches ███ path of travel to westbound um, as
9              ███ turns westbound now, ███ uh ███ head is turned
10             and ███'s looking westbound.  And now ███ begins to
11             make a movement towards his right.

12

13  NEUBECK:   Okay.  So and do you, do you recall if you see
14             anything in his hands or --

15  P.O.TOTH:  I never saw ███ hands.

16

17  NEUBECK:   You never saw ███ hands.

18  P.O.TOTH:  I completely stare right at ███ head.

19

20  NEUBECK:   Okay.  And how close do you think you were to 'em
21             when you were chasing 'em?

22  P.O.TOTH:  Initially I was almost right on top of 'em at
23             when ███ exited the car.  And then as we got to
24             the sidewalk um, a, a distance started to come
25             between us.

26

27  NEUBECK:   And can you approximate what you think that
28             distance was?

29  P.O.TOTH:  I, it, I really couldn't tell you.  I don't know.

30

31  NEUBECK:   Okay.  Okay.  So, and you, so you chase, you're
32             chasin' ███ uh I guess it would be west,

Chatman v. City, et al., 13 C 5697
FCRL 000608

1    westbound down the sidewalk towards Jeffrey on
2    75th?

3    P.O.TOTH: That's correct.

4

5    NEUBECK: And uh what transpires from there?

6    P.O.TOTH: Um, after ███ begins to make a move toward ███

7            right, uh I hear gunshots go off.

8

9    NEUBECK: Okay. And how many gunshots do you hear?

10   P.O.TOTH: I initially heard three.

11

12   NEUBECK: Three gunshots?

13   P.O.TOTH: Yes.

14

15   NEUBECK: And whaddid they sound like uh succession wise?

16   P.O.TOTH: Uh I really couldn't tell you, I don't know.

17

18   NEUBECK: Were they rapid or was there --

19   P.O.TOTH: It, I wouldn't classify them as rapid, no.

20

21   NEUBECK: Okay. Um, --

22   P.O.TOTH: I don't really recall a pause or any type of

23           succession or anything like that.

24

25   NEUBECK: Okay.  And where did your what, what'd you do

26           from that point after you heard the gunshots?

27   P.O.TOTH: Uh when I initially heard the gunshots, uh I

28           slowed my uh pursuit cause I didn't know where

29           they were comin' from.  Um, and I still kept a

30           visual on the offender that was fleeing as he

31           rounded the corner of 75th toward Jeffrey I

32           continued my pursuit.  Um, and as I rounded the

Chatman v. City, et al., 13 C 5697
FCRL 000609

1        corner, I observed uh offender layin' in the

2        street on uh Jeffrey.

3

4    NEUBECK: Did you ever unholster your weapon while your,

5        while your chasin' the offender?

6    P.O.TOTH: It was unholstered.

7

8    NEUBECK: You had it in your hand?

9    P.O.TOTH: Yes.

10

11   NEUBECK: When you were chasin' 'em?

12   P.O.TOTH: Yes.

13

14   NEUBECK: Okay. Um, So, so you're chasin' 'em down the

15       sidewalk. You hear the gunshots. You come

16       around the corner and uh subject's now layin' on

17       the ground?

18   P.O.TOTH: That's correct.

19

20   NEUBECK: Okay. Go ahead.

21   P.O.TOTH: Um, I then holster my weapon and I approach ▮▮▮

22       and I, as I approach the offender states I give

23       up. I'm shot. Okay after ▮▮ ▮▮ states that,

24       I'm now in the process of putting handcuffs on

25       the individual.

26

27   NEUBECK: Okay. And uh did you notice if ▮▮ was shot?

28   P.O.TOTH: Um, as I was pulling ▮▮▮ arms and handcuffing 'em

29       behind ▮▮▮ back, I noticed that there was a

30       gunshot wound um in ▮▮ right forearm.

31

32   NEUBECK: Okay. And you know was ▮▮ bleeding or --

Chatman v. City, et al., 13 C 5697
FCRL 000610

1  P.O.TOTH: I didn't see any blood.

2

3  NEUBECK: Okay. How'd you know that was a gunshot wound?
4  P.O.TOTH: Uh well after he stated ▓▓ was shot, after I
        heard the gunshots and I saw the hole in the, in
5        the uh coat of ▓▓ uh jacket or whatever, that, I
6        just assumed that ▓▓ it was a gunshot wound.
7

8

9  NEUBECK: Okay. And were you able to, were you able to
10        determine where the gunshots came from?
11 P.O.TOTH: Uh yes after the fact it was that my partner uh
12        Officer Fry was over there firin' on, on ▓▓

13

14 NEUBECK: And you don't, do you know for certain how many
15        uh rounds Officer Fry fired?
16 P.O.TOTH: Uh four.

17

18 NEUBECK: And initially you said you heard three gunshots.
19        Was there one that was later on or, or is that
20        just what you recall?
21 P.O.TOTH: That's what I recall was the three.

22

23 NEUBECK: Okay. Um, so you draw your weapon as soon as you
24        get outta your vehicle and you have it in your
25        right hand until your 'bout to take the
26        individual into custody.
27 P.O.TOTH: That would be correct, yes.

28

29 NEUBECK: Okay. Why, why didn't you fire your weapon?
30 P.O.TOTH: Um, at first I thought I could, I could actually
31        catch 'em you know. And I didn't uh, I, as I was
32        lookin' at ▓▓ I just seen ▓▓ head um and I

Chatman v. City, et al., 13 C 5697
FCRL 000611

1    couldn't see ███ hands as ███ initially left the
2    car because of the you know from where the door
3    was.   And then as ███ was running like I said I
4    was, well first I was focusing right on ███face
5    and then I was focused right on the back of ███
6    head so I never saw ███ hands.

7

8  NEUBECK:  Okay.   Um, and was anything in ███ hands?  Or do
9          you recall?

10  P.O.TOTH:  Um, --

11

12  NEUBECK:  After the fact?

13  P.O.TOTH:  When, when I seen 'em was, when I was cuffin' 'em
14         that's when I actually first saw ███ hands and
15         there was nothin' in there at that time.

16

17  NEUBECK:  Okay.   Did your partner relay any information to
18         you as you were takin' 'em into custody or
19         shortly after?

20  P.O.TOTH:  Uh no initially after uh ███ was bein' placed into
21         custody, um, I heard uh sirens and it turned out
22         that there was actually um a fire truck that was
23         coming westbound on 75th.   We flagged the driver
24         down.   They stopped and we're pointin' at the
25         offe, uh offender that's cuffed on the ground
26         sayin' that ███ was shot.   And it was after that
27         fact that I see a big black box that's uh next to
28         the offender uh closer onto the sidewalk.

29

30  NEUBECK:  Okay.   Can you describe what that was?  Or do you
31         recall?

Chatman v. City, et al., 13 C 5697
FCRL 000612

1    P.O. TOTH: Uh I don't know the specifics of it.   It was a
2               slender black box.
3
4    NEUBECK:   Okay.   Um, and do you recall why your partner
5               stopped firin' his weapon?
6    P.O. TOTH: Um, no he never told me.
7
8    NEUBECK:   Was there any other individuals in the area when
9               the shooting occurred?
10   P.O. TOTH: Uh there was cars on the street.   Um, you know in
11              the intersection you know there was people that
12              were driving.
13
14   NEUBECK:   Okay.   There was no individuals that came up
15              afterwards that you, you observed that observed
16              what took place?
17   P.O. TOTH: As far as like pedestrian traffic?
18
19   NEUBECK:   Correct.
20   P.O. TOTH: Aw I don't believe so, no.
21
22   NEUBECK:   Were there any other officers on scene when this
23              occurred?
24   P.O. TOTH: No at, no not at the time of the incident.   After
25              the fact obviously there was more people that
26              came but not at the initial time of this
27              incident, no.
28
29   NEUBECK:   Okay.   Do you recall if you uh uh had any type of
30              tunnel vision or anything during the incident?
31   P.O. TOTH: No.
32

Chatman v. City, et al., 13 C 5697
FCRL 000613

1  NEUBECK:  No.

2  P.O. TOTH:  No.

3

4  NEUBECK:  What about any type of auditory exclusion?
5            Meaning you couldn't hear or didn't hear parts of
6            what, what transpired?

7  P.O. TOTH:  No I mean I heard myself giving 'em direction um,
8              and then I heard obviously heard the gunshots.

9

10 NEUBECK:  And after or as the incident occurred and
11           (inaudible) takin' place was anything transmitted
12           uh over the OEMC in regards to what was, what was
13           going on?

14 P.O. TOTH:  Uh I believe Officer Fry came over that it was
15             shots fired by the police.

16

17 NEUBECK:  Okay.

18 P.O. TOTH:  And he gave the location 75th and Jeffrey.

19

20 NEUBECK:  Okay.  Any, anything immediately after?

21 P.O. TOTH:  Uh I don't believe so, no.  I didn't make any
22             transmissions.

23

24 NEUBECK:  Okay.  And you stated that right after you take
25           'em into custody you, you observe an ambulance
26           approach --

27 P.O. TOTH:  It was a fire truck.

28

29 NEUBECK:  Fire truck.

30 P.O. TOTH:  Fire engine.

31

32 NEUBECK:  A fire engine --

Chatman v. City, et al., 13 C 5697
FCRL 000614

1   P.O.TOTH: Yeah.

2

3   NEUBECK: -- approach the scene.

4   P.O.TOTH: Yes.

5

6   NEUBECK: Okay and you wave them down?

7   P.O.TOTH: Yes.  I, I couldn't tell you if they were goin'

8              to a different call or, I actually thought they

9              were comin' to our call.

10

11  NEUBECK: Okay.  So they stopped and this --

12  P.O.TOTH: Oh yeah they stopped and they came out and

13             everything.

14

15  NEUBECK: Okay.  All right so no other officers discharged

16             their weapons during this incident besides your

17             partner Officer Fry?

18  P.O.TOTH: No.

19

20  NEUBECK: And do you recall what uh um, I guess ▮▮▮▮▮▮

21             was uh dressed in during this incident?

22  P.O.TOTH: Uh no not specifically.

23

24  NEUBECK: Okay.  Did you, did you recall if you observed

25             any type of cameras or anything in the area where

26             this incident took place?

27  P.O.TOTH: Yes.

28

29  NEUBECK: Okay.  Where were they located?

30  P.O.TOTH: There's uh, a camera on 75th and Jeffrey on a pole

31             it was a POD Camera.

32

Chatman v. City, et al., 13 C 5697
FCRL 000615

1  NEUBECK:  A POD camera.

2  P.O.TOTH:  Yeah.

3

4  NEUBECK:  Okay.  Um, and what was the lighting like in the
5          area where this was at?

6  P.O.TOTH:  Uh it was good uh sunlight, daylight.

7

8  NEUBECK:  Sunlight.  What was the weather light do you
9          recall?

10  P.O.TOTH:  Cold, but clear.

11

12  NEUBECK:  Okay.  At the time uh Officer Fry discharged his
13          weapon, uh do you believe that there was any
14          other option when it came to uh stoppin' the
15          threat posed by uh ████████ during this
16          incident?

17  P.O.TOTH:  No, um, I don't believe so. Uh I, I truly believe
18          that uh Officer Fry felt as though this
19          individual was armed.  That ██ was part of an
20          armed jacking that uh fled from the vehicle that
21          was uh takin' the carjacking.  And um, with his
22          actions of running, uh and, and began to turn um,
23          I believe that he was uh in fear of my life and
24          that's why he just discharged the weapon as well
25          as probably his own.

26

27  NEUBECK:  Okay.  All right.  Okay.  All right is there
28          anything else that you uh wish to add to your
29          statement at this time?

30  P.O.TOTH:  Uh not at this time, no.

31

Chatman v. City, et al., 13 C 5697
FCRL 000616

1  NEUBECK:  Really  quickly,  is,  this  is  your  first
2            interaction  that  you  ever  had  with  uh  ████
3            ████? Have you ever dealt with ██ before?
4  P.O.TOTH: No  I  don't  believe  I've  ever  had  an  encounter
5            with ██ before.
6
7  NEUBECK:  Okay.  Is everything in your statement true and
8            accurate to the best of your knowledge?
9  P.O.TOTH: Absolutely.
10
11 NEUBECK:  Okay.  This will now conclude the audio recorded
12           statement of Officer Toth regarding Log number
13           1059373 and U#13-, 13-02.  It's the 7th of January
14           2013 it's now approximately 2220 hours.

Chatman v. City, et al., 13 C 5697
FCRL 000617

1
2
3
4
5      I, CAROL A. O'LEARY, do hereby certify or affirm that
6  I have impartially transcribed the foregoing from an audio
7  recording of the above-mentioned proceeding to the best of
8  my ability.
9
10
11
12
13
14
15
16                    _Carol A. O'Leary_
17                    Carol A. O'Leary

#52

**Chatman v. City, et al., 13 C 5697**
**FCRL 000618**