# EXHIBIT E

```
            UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS
                  EASTERN DIVISION
LINDA CHATMAN, as         )
Special Administrator of  )
the Estate of Cedrick     )
Chatman,                  )
        Plaintiff,        )
    vs.            ) No. 13 CV 5697
THE CITY OF CHICAGO, LOU  )
TOTH, KEVIN FRY, and      )
others not presently      )
known to the Plaintiff;   )
        Defendants.       )
```

The discovery deposition of ERIC SZWED, taken in the above-entitled cause, before MARGARET A. RITACCO, a Certified Shorthand Reporter of Cook County, Illinois, on October 8, 2014, at the hour of 11:54 a.m. at 200 North LaSalle Street, Suite 2900, Chicago, Illinois, pursuant to notice.

Reported by: MARGARET A. RITACCO, CSR
License No.: 084-002796

1

APPEARANCES:
    THE OFFICE OF MARK F. SMOLENS
    BY: MR. MARK F. SMOLENS
    1627 West Colonial Parkway, Suite 301,
    Inverness, Illinois 60067
    (773) 580-4982
    ryansmolensjones@hotmail.com
        -and-
    COFFMAN LAW OFFICES
    BY: MR. BRIAN W. COFFMAN
    2615 West Sheffield Avenue, Suite 1
    Chicago, Illinois 60614
    (773)348-1295
    bccoffmanlaw@gmail.com
        -and-
    MS. NICOLE L. BARKOWSKI
    1637 Colonial Parkway
    Inverness, Illinois 60067
    (800) 758-8591
        On behalf of the Plaintiff;

2

APPEARANCES: (Continued)
    CITY OF CHICAGO
    ASSISTANT CORPORATION COUNSEL
    BY: MS. TIFFANY HARRIS
        MS. JILL RUSSELL
    30 North LaSalle Street, Suite 900
    Chicago, Illinois 60602
    (312) 742-7030
    tiffany.harris@cityofchicago.org
    jill.russell@cityofchicago.org
        On behalf of the Defendants,
        Kevin Fry & Lou Toth.

3

                    I N D E X
WITNESS                      EXAMINATION
ERIC SZWED
    BY MR. COFFMAN                    5


                    E X H I B I T S
NUMBER                       IDENTIFICATION
SZWED Exhibit
    No. 9                    10
    No. 10                   10
    No. 11                   19
    No. 12                   40
    (EXHIBITS RETAINED BY MR. COFFMAN)

4

**McCorkle Litigation Services, Inc.**
**Chicago, Illinois  (312) 263-0052**

| 1 | (Witness duly sworn.) |
|---|---|
| 2 | MR. COFFMAN: Sir, could you please state |
| 3 | your name and spell it for the record? |
| 4 | THE WITNESS: My name is Eric Szwed, E-R-I-C, |
| 5 | S-Z-W-E-D. |
| 6 | MR. COFFMAN: Thank you, sir. |
| 7 | ERIC SZWED, |
| 8 | having been first duly sworn, was examined and |
| 9 | testified as follows: |
| 10 | EXAMINATION |
| 11 | BY MR. COFFMAN: |
| 12 | Q. Have you ever given a deposition |
| 13 | before? |
| 14 | A. Yes. |
| 15 | Q. When was the last time? |
| 16 | A. A couple of months ago. |
| 17 | Q. And was that regarding a federal or a |
| 18 | state case, if you know? |
| 19 | A. I don't know. |
| 20 | Q. How long have you been a police officer |
| 21 | at the City of Chicago? |
| 22 | A. 19 years. |
| 23 | Q. And can you very quickly run me through |
| 24 | the positions you've held in those 19 years? |

5

| 1 | A. I was a patrol officer for nine years, |
|---|---|
| 2 | an evidence technician for approximately three |
| 3 | years and a forensic investigator for six years. |
| 4 | Q. In the nine years that you were a |
| 5 | patrol officer, what area were you assigned to |
| 6 | in the city? |
| 7 | A. I was assigned to the 14th District. |
| 8 | Q. What area would that consist of? |
| 9 | A. Humboldt Park, Wicker Park. |
| 10 | Q. And give me a very quick resume of your |
| 11 | education background. |
| 12 | A. I have a bachelor's degree in criminal |
| 13 | justice. |
| 14 | Q. Where did you obtain that from? |
| 15 | A. Loyola University. |
| 16 | Q. What year? |
| 17 | A. I graduated in '94. |
| 18 | Q. Any other formal education after |
| 19 | graduation? |
| 20 | A. No, other than retraining with the |
| 21 | department. |
| 22 | Q. And I'm assuming you attended the |
| 23 | police academy? |
| 24 | A. Correct. |

6

| 1 | Q. In the police academy, did you have any |
|---|---|
| 2 | type of special training for evidence technician |
| 3 | or forensic? |
| 4 | A. As a new recruit, we had some basic |
| 5 | training regarding crime scenes. |
| 6 | Q. Over your 14 years on the force, have |
| 7 | you had additional training for forensic and |
| 8 | evidence technician? |
| 9 | A. Yes. |
| 10 | Q. And can you explain to us what that |
| 11 | education consisted of? |
| 12 | A. Prior to being promoted to an evidence |
| 13 | technician, I received training within the |
| 14 | Chicago Police Department Forensic Services Unit |
| 15 | regarding processing crime scenes. At the same |
| 16 | time, I also received some training at the |
| 17 | Illinois State Police Lab regarding evidence and |
| 18 | processing the crime scenes. |
| 19 | Q. Do you know how long that training |
| 20 | period was with the City? |
| 21 | A. It was between three to four weeks. |
| 22 | Q. And with the State of Illinois, how |
| 23 | long was that training period? |
| 24 | A. That was included in that time frame. |

7

| 1 | Q. Did you receive any type of |
|---|---|
| 2 | certification or any type of degrees with that |
| 3 | training? |
| 4 | A. No. |
| 5 | Q. Or is it more just inhouse? |
| 6 | A. More of inhouse training. I also |
| 7 | received additional training prior to being |
| 8 | promoted to a forensic investigator, more |
| 9 | detailed training in the use of specialized |
| 10 | equipment that we had. |
| 11 | Q. I guess my question for you is, you |
| 12 | were a patrolman for nine years. Were you |
| 13 | assigned to the evidence tech team, or is that |
| 14 | something you requested? |
| 15 | A. I took a test and I was promoted off |
| 16 | the score of the test. |
| 17 | Q. In your capacity as a Chicago Police |
| 18 | Officer, have you ever been named as a defendant |
| 19 | in a case, sir? |
| 20 | A. What kind of case? Can you be more |
| 21 | specific? |
| 22 | Q. Any case. Have you ever been sued in |
| 23 | your capacity as a police officer? |
| 24 | A. No. |

8

**Page 9**

Q. Before today's deposition, can you give me a list of any materials that you reviewed?
A. I reviewed my case report and the sketch and the scene photographs.
Q. Do you know what an Officer Battery Report is?
A. I do.
Q. I'm assuming in your career, you have filled out an Officer Battery Report before?
A. I don't recall if I have or not.
Q. Do you know what a Tactical Response Report is?
A. Yes.
Q. Did you review the Tactical Response Report that was generated for this case before you deposition today?
A. No.
Q. The same thing with the Officer Battery Report that's been generated by Officers Toth and Fry in this case, did you review those documents?
A. No.
Q. Generally as an evidence tech, would you have any type of input or assistance in

**Page 10**

filling out an Officer's Battery Report or Technical Response Report?
A. No.
Q. Besides talking with the City lawyers today, have you had any conversations with any of your supervisors or anyone else regarding today's testimony that you're going to be giving?
A. No.
   (Whereupon, Deposition Exhibit
   Nos. 9 and 10 were marked for
   identification.)
BY MR. COFFMAN:
Q. I'm going to show you, sir, what we've marked as Exhibit 10. For identification purposes, this is a three-page document Bates stamped 784 to 786. This three-page exhibit, is this one of the materials that you reviewed before today's deposition?
A. Yes.
Q. Now, the title to this document is Crime Scene Processing Report. The first question for you is, who is responsible for filling out the Crime Scene Processing Report?

**Page 11**

A. I was.
Q. And on the date of the incident on January 7, 2013, who was your immediate supervisor that day?
A. To the best of my knowledge, it was Sergeant David Grant.
Q. And what is David Grant's, I guess, position with the City of Chicago Police Department?
A. He's a sergeant within the Forensic Services Unit.
Q. Now, as we look at this -- the first page of this exhibit, there are listed several names under the investigating officers and technicians. I see that your name is there as the forensic investigator, correct?
A. Correct.
Q. And it looks like -- I think you mentioned Sergeant David Grant is also listed in that list of people, correct?
A. Correct.
Q. How is it, sir, that you first became aware of this incident or were requested to come to the scene?

**Page 12**

A. I received a phone call via my cellular phone from our desk officer.
Q. And who was that?
A. I don't recall who it was that day.
Q. Do you recall what the substance of that conversation was?
A. The desk officer told me there was a police-involved shooting, gave me the location, and I responded.
Q. Where are you normally stationed when you're on duty?
A. Our office is at 1011 South Homan Avenue.
Q. How did you get from the station to the scene?
A. On this particular day, I don't believe I was in the station when I received the call. I was out on the street in our forensic vehicle, and I immediately responded to the scene in our forensic vehicle.
Q. This forensic vehicle, can you describe it for us? What does it look like?
A. It's similar to a Chicago Fire Department ambulance, and in the rear

Page 13:

1   compartment are storage lockers, a small work
2   area, and all our equipment is contained within
3   that vehicle.
4       Q.  Based on this Exhibit No. 10, it looks
5   like the unit -- did you actually drive your own
6   police car to the scene or the actual unit
7   itself?
8       A.  Yes.
9       Q.  Was there anyone with you in that
10  vehicle?
11      A.  No.
12      Q.  When you first got to the scene, who
13  did you first talk to?
14      A.  When I arrived at the scene, I met with
15  the assigned detectives.
16      Q.  And that would have been Detective
17  Hackett and Detective Alfini?
18      A.  Correct.
19      Q.  And do you recall what time
20  approximately -- let me back up a second -- that
21  you received that phone call on January 7, 2013?
22      A.  The initial phone call?
23      Q.  Yes.
24      A.  Based on my report, I received it at

Page 14:

1   approximately 14:20 hours.
2       Q.  And what time did you arrive on the
3   scene?
4       A.  Based on my report, approximately 14:50
5   hours.
6       Q.  And what do you recall as you arrived
7   at the scene? Was there a fire truck there?
8   Was there an ambulance still present?
9       A.  I don't recall seeing a fire truck or
10  ambulance. I do recall seeing crime scene tape
11  surrounding the area of the intersection of
12  Jeffery and 75th Street, and there were officers
13  stationed protecting the scene.
14      Q.  Let's fast forward to when you first
15  spoke to Detectives Hackett and Alfini. What
16  did they say to you regarding what had happened
17  that day, if you remember?
18      A.  In summary they stated that officers
19  attempted to stop a vehicle. The subject exited
20  the vehicle, and one of the officers fired at
21  the subject, striking him, and he was removed to
22  the hospital.
23      Q.  So when you arrive on the scene and you
24  have this conversation with Detectives Hackett

Page 15:

1   and Alfini, what is the next step that you take
2   as far as part of your investigation?
3       A.  I had the assigned detectives walk me
4   through the scene and point out any potential
5   evidence that was located in the scene.
6       Q.  When you were performing this
7   walkthrough of the scene, are you taking any
8   type of notes at all?
9       A.  I don't recall if I took notes.
10      Q.  Do you normally in your course of the
11  investigation take notes while doing your
12  investigation?
13      A.  If there is a significant amount of
14  information, I may take notes.
15      Q.  I'm trying to get an idea here. As you
16  were on the scene, are you in charge of the
17  forensic investigation of this area?
18      MS. HARRIS: Objection, vague, form. Go
19  ahead.
20      THE WITNESS: My responsibility is to process
21  the scene and evidence, to locate it, identify
22  it, photograph it, videotape it, document it,
23  and to recover it.
24

Page 16:

1   BY MR. COFFMAN:
2       Q.  On this particular day in this
3   investigation, was there any -- was it Sergeant
4   Grant or Detectives Alfini or Hackett directing
5   you to specific evidence or did you have the
6   ability to investigate on your own for any other
7   evidence?
8       A.  The assigned detectives pointed out
9   most of the evidence which was found at the
10  scene. I do do an additional search of the area
11  in case something was overlooked.
12      Q.  In this three-page Exhibit No. 10,
13  there's listed here several inventory items.
14  There are crime scene photos that are listed,
15  and there also are the involved vehicles and a
16  narrative. Do you see all that?
17      A.  Yes.
18      Q.  So let's flip to the narrative portion
19  on Page 3 of this exhibit. Is this something
20  that you would have typed into your computer
21  screen or database regarding the incident?
22      A.  Yes.
23      Q.  And this information would have been
24  based on not only your conversations with the

**Page 17**

1  detective there on the scene but also your own
2  investigation; is that correct?
3  A. Correct.
4  Q. Now, in the narrative portion, it
5  indicates that Unit 177 -- I just want to make
6  sure we're clear here -- that is the vehicle
7  that you drove, the forensic vehicle?
8  A. Unit 177 is the forensic services
9  section that's our office.
10  Q. Okay. Besides having a discussion with
11  Detectives Hackett and Alfini, did you have
12  discussions with any other individuals on the
13  scene during your investigation?
14  A. I may have spoken with Sergeant David
15  Grant. Other than that, I don't recall.
16  Q. So it would be fair to say that you did
17  not speak to the two involved officers, Toth or
18  Fry, at any time during your investigation?
19  A. Correct.
20  MS. HARRIS: Objection, mischaracterizes
21  testimony. Go ahead.
22  THE WITNESS: Correct. I did not speak to
23  them.

**Page 18**

1  BY MR. COFFMAN:
2  Q. Now, Sergeant David Grant, was he
3  assisting you at all in the investigation of
4  this crime scene?
5  A. He assisted me by responding to the
6  scene and asking what kind of help I may need in
7  processing the scene, if there was anything
8  additionally I needed him to do for me. But
9  other than that, he did not physically assist
10  me.
11  Q. This documents, on Page 3, it has a --
12  it looks like your name is submitted by, and it
13  gives your star number and also a time stamp of
14  January 8th, 2013, at 1:47 military time.
15  When would you have completed this
16  document?
17  A. The report would have been completed
18  shortly before that time.
19  Q. Is that something that you completed on
20  scene, or did you go back to the station to
21  complete this document?
22  A. This was completed in our office.
23  Q. Now, this document or this report was
24  approved by a David R. Friel, F-r-i-e-l, it

**Page 19**

1  looks like nine minutes after you submitted it.
2  Who is David Friel?
3  A. David Friel is also a sergeant within
4  the Forensic Services Units.
5  Q. Do you know, was David Friel ever on
6  the crime scene during your investigation?
7  A. I do not recall.
8  (Whereupon, Deposition Exhibit
9  No. 11 was marked for
10  identification.)
11  BY MR. COFFMAN:
12  Q. I'll show you what we've marked as
13  Exhibit 11. For identification purposes, this
14  is Bates stamped 187 to 194. Sir, can you take
15  a second to look at that document?
16  Now, this exhibit is titled Property
17  Inventory, and there's inventory number
18  12802481. Is this a document that you would
19  also fill out during your investigation?
20  A. Yes.
21  Q. On the first page of Exhibit 11 on
22  Page 187 -- actually go down to the bottom of
23  this page where it says, check one, left side.
24  There's a hold for investigation, it looks like

**Page 20**

1  an X, for Patrick Hackett. What is the reason
2  for that hold for investigation? Can you
3  explain?
4  A. The hold for investigation is so that
5  the items inventoried are not released to
6  anybody unauthorized or that the property is not
7  destroyed.
8  Q. And for this inventory of 12802481, the
9  description of the property, it looks like there
10  are four expended shells with a Hornaday 45
11  automatic cartridge. Do you see that?
12  A. Yes.
13  Q. Where would these cartridges be stored
14  after your investigation?
15  A. After I package and inventory the
16  cartridge cases, I place them in an evidence
17  storage room within our unit.
18  Q. If we go to the third page of that
19  document, sir, marked 189, with inventory number
20  12802495, the description of the property here
21  is a black cell phone, slash, pager. There's
22  also a white cellular phone vehicle car adapter.
23  Do you see that?
24  A. Yes.

| | | | |
|---|---|---|---|
| 1 | Q. The same thing as the previous two | 1 | BY MR. COFFMAN: |
| 2 | pages, it looks like these properties were also | 2 | Q. Now, as you're flipping through Group |
| 3 | held for investigation with Officer Hackett, | 3 | Exhibit No. 9, were you the only officer on the |
| 4 | correct? | 4 | scene taking photographs of the vehicles, of the |
| 5 | A. Correct. | 5 | objects during your investigation? |
| 6 | Q. If you go to Page 191, inventory number | 6 | A. Yes. |
| 7 | 12802496, and the item that is being | 7 | Q. Now, you mentioned that you arrived on |
| 8 | inventoried, it looks like a copper metal | 8 | the scene, it was still daylight outside, |
| 9 | fragment received from sidewalk at 1958 | 9 | correct? |
| 10 | 75th Street, correct? | 10 | A. Correct. |
| 11 | A. Correct. | 11 | Q. Now, as you started flipping through |
| 12 | Q. And this item was also held for | 12 | the first, let's say, 20, 30 pages of the |
| 13 | investigation, Officer Hackett, correct? | 13 | photographs, you would agree with me that the |
| 14 | A. Correct. | 14 | photos that are depicted there are at nighttime, |
| 15 | Q. And on Page 193, inventory number | 15 | correct? |
| 16 | 12802501, a description of the property are, it | 16 | A. Correct. |
| 17 | looks like, one quantity of blood swabs that | 17 | Q. In your investigation, you take digital |
| 18 | were taken and they were taken from the street; | 18 | photographs; is that correct? |
| 19 | is that correct? | 19 | A. Correct. |
| 20 | A. Correct. | 20 | Q. Are the photographs time stamped, date |
| 21 | Q. How would you take a -- can you tell | 21 | stamped anywhere, if you know, because I know |
| 22 | me, how would you take that sample of the blood | 22 | they're not on the photographs that we have, but |
| 23 | that was found on the street? | 23 | do you have any type of system that would show |
| 24 | A. First I would put on clean latex | 24 | us when those photographs were taken? |

Page 21 / Page 23

| | | | |
|---|---|---|---|
| 1 | gloves. We use sterile cotton tip swabs and | 1 | A. Not that I know of. |
| 2 | distilled water, moisten the cotton tip swabs | 2 | Q. So let me flip -- have you flip for me |
| 3 | with the distilled water and dab the apparent | 3 | to 433 in that packet. |
| 4 | blood, which in this case was located on the | 4 | MS. HARRIS: 433 or 443? |
| 5 | street. | 5 | MR. COFFMAN: It should be 433. |
| 6 | Q. I didn't see in your report anywhere. | 6 | BY MR. COFFMAN: |
| 7 | But as part of your investigation, did you | 7 | Q. It should be a picture of a Jeep. On |
| 8 | quantify how much blood that you saw on the | 8 | 433 can you describe for us, what is that |
| 9 | street? | 9 | depicted there in that photograph? |
| 10 | A. I did not. | 10 | A. I believe that is the side view mirror |
| 11 | Q. Do you typically in your investigation | 11 | on the front passenger's side of a black Jeep |
| 12 | quantify those type of substances that are found | 12 | SUV. |
| 13 | on the crime scene? | 13 | Q. Do you recall during your investigation |
| 14 | A. No. It's just documented in the | 14 | if Detective Hackett or Alfini directed you to |
| 15 | photos. | 15 | this vehicle to take photographs of it? |
| 16 | Q. So let's take you to the photos. We've | 16 | A. I recall being directed to photograph |
| 17 | marked here as Group Exhibit No. 9 for | 17 | the damage on the vehicle. However, I do not |
| 18 | identification purposes, this is Bates stamped | 18 | recall who it was that directed me. |
| 19 | 330 to 445. | 19 | Q. Do you know where that vehicle was when |
| 20 | MR. COFFMAN: And I think we're in agreement | 20 | you took photographs of it? |
| 21 | that these are not all the photographs that were | 21 | A. The vehicle was located in the parking |
| 22 | taken in this matter. | 22 | lot on the northeast corner of the intersection. |
| 23 | MS. HARRIS: Yes. | 23 | Q. Did you ever have any conversations |
| 24 | | 24 | with the owner of that vehicle regarding the |

Page 22 / Page 24

**Page 25**

1  damage that's depicted in those photographs?
2  A. I did not.
3  Q. If I could see real quick here. All
4  right. I'm going to show you here, sir, on
5  photographs 437, 438, 439, and just describe for
6  us what is depicted in those three photographs.
7  A. Those are photographs of damage on the
8  exterior door handle of the front passenger side
9  of the black Jeep SUV.
10  Q. Just as my question before, did anyone
11  specifically on scene direct you to take
12  photographs of what is detected as far as damage
13  in those photos?
14  A. Yes.
15  Q. Do you know who?
16  A. I do not recall.
17  Q. Do you recall being told the reason why
18  you needed to take photographs?
19  A. I recall being told that the vehicle
20  may have been struck at some time during this
21  incident.
22  Q. Based on your experience as a forensic
23  investigator, could you tell during your
24  investigation or even now what is depicted in

**Page 26**

1  those three photographs? Is that a bullet
2  damage to that vehicle, if you know?
3  MS. HARRIS: Objection, speculation,
4  foundation. Go ahead.
5  THE WITNESS: I cannot say for certain if
6  it's bullet damage or not, but there was other
7  damage on the passenger's side of that vehicle
8  which --
9  BY MR. COFFMAN:
10  Q. Besides the mirror and door we've
11  talked about?
12  A. The mirror and the door handle are the
13  obvious damage. There may have been some
14  scrapes or swipe marks also on the passenger's
15  side of the vehicle which are not clear in these
16  photographs.
17  Q. What type of camera do you use to take
18  photographs on the scene?
19  A. It's a digital Nikon 40D.
20  Q. And do you have a system that you
21  download those photographs into after you get
22  back to your office?
23  A. Personally I do not download the
24  photos. I fill out a photo envelope, and a

**Page 27**

1  memory card is placed in that envelope and it's
2  forwarded to the photography center.
3  Q. Now, in addition to the photographs
4  that you took during your investigation of this
5  scene, I think you mentioned you also took a
6  video; is that correct?
7  A. Correct.
8  Q. And can you tell me, is that something
9  that you typically do of crime scene
10  investigations, take video in addition to the
11  photographs?
12  A. Yes.
13  Q. And in this case do you recall what
14  your video consisted of?
15  A. My videos would have consisted of the
16  same areas and evidence that are shown in the
17  photographs.
18  Q. And as part of that video, do you
19  narrate or explain what you're showing?
20  A. No. There's no sound to the video.
21  Q. So my question for you, sir, is that
22  based on as we can see in the photographs here
23  that you took, the first photographs on the
24  scene were of the Jeep black -- or black Jeep;

**Page 28**

1  is that correct?
2  A. Correct. You could see it's still
3  daylight. You have to remember, this was in
4  January. Days are shorter.
5  Q. Sure.
6  A. It gets dark early.
7  Q. And the other photographs that are
8  depicted of the scene and some of the objects --
9  inventory objects that we talked about, do you
10  have or do you remember when those photographs
11  were taken?
12  A. They were taken within a couple of
13  hours of these photographs of the vehicle.
14  Q. So what I'm trying to understand a
15  little bit better here is, when you arrive on
16  the scene and you speak to the initial
17  detectives that are there, is there any protocol
18  that you have to follow as far as before you
19  begin your investigation to allow either the
20  officers that are involved in the shooting or
21  any other detectives to have a walkthrough of
22  the crime scene before you can do your
23  investigation?
24  A. Yes.

Page 29:

1  Q. And who -- how -- strike that.
2      In this case do you know how long you
3  waited before you started your investigation of
4  the scene after arriving?
5  A. I don't recall.
6  Q. Was there anyone on the scene that gave
7  you the go ahead or the okay to say, Officer
8  Szwed, you can start your investigation at this
9  point?
10 A. The assigned detectives would let me
11 know when it's okay for me to begin processing
12 the scene.
13 Q. In this case did you get that okay from
14 either Detective Hackett or Detective Alfini,
15 and if so, at what time frame did you get that?
16 A. I don't know. I don't recall exactly
17 who gave me the okay or what time it was.
18 Q. Do you know how long your video was
19 that you took of the scene?
20 A. I do not recall.
21 Q. Do you know if it's recorded anywhere
22 in your report as far as the length?
23 A. No.
24 Q. If I can direct you -- I don't know if

Page 30:

1  it's in any of these photographs. You've
2  also -- as part of your investigation, it looks
3  like you took photographs of a silver Dodge
4  Charger with Wisconsin license plates. Do you
5  remember that?
6  A. Yes.
7  Q. Do you recall if anyone directed you to
8  take photographs of that vehicle?
9  A. I don't recall if I was specifically
10 directed to or not.
11 Q. Do you recall where that vehicle was
12 located when you took photographs of it?
13 A. It was in the northwest portion of the
14 intersection of Jeffery and 75th Street.
15 Q. Was it inside the roped off crime scene
16 area?
17 A. Yes.
18 Q. So let me direct your attention to four
19 photographs here, Bates stamp 356, 357, 358 and
20 359. Take a look at those for me. Just make
21 sure we're in agreement, sir. Those four
22 photographs depict the silver Dodge Charger that
23 was on the scene during your investigation?
24 A. Correct.

Page 31:

1  Q. And can you tell us and describe what
2  is depicted in those photographs that you're
3  taking there?
4  A. That appeared to be a bullet hole in
5  the engine compartment hood of the Dodge
6  vehicle.
7  Q. Could you tell during your
8  investigation if that was a -- what I will call
9  a fresh wound or a fresh bullet hole?
10     MS. HARRIS: Objection, speculation,
11 foundation. Go ahead.
12     THE WITNESS: I could not.
13 BY MR. COFFMAN:
14 Q. As part of your investigation and
15 taking photographs of the silver Dodge Charger,
16 did you actually try to open the vehicle's hood
17 to see if there was any type of bullet fragments
18 found inside?
19 A. I did.
20 Q. Did you see anything?
21 A. I did not.
22 Q. How about inside the vehicle itself?
23 Did you take an inventory of the contents of the
24 silver Dodge Charger?

Page 32:

1  A. I did an overall search of the
2  vehicle -- the interior of the vehicle just to
3  see if there were any weapons in clear view, and
4  that's as far as I went, knowing that the
5  vehicle was going to be relocated and processed
6  in more detail.
7  Q. And did your investigation turn up any
8  type of guns or any other weapons that were in
9  plain view inside the Dodge Charger?
10 A. No.
11 Q. Did you take any photographs during
12 your investigation of when you opened the hood
13 of the Dodge Charger looking inside?
14 A. I did not.
15 Q. Any reason why you did not take any
16 photographs of it?
17 A. I could not see any damage or evidence
18 on the underside of the hood, so I did not
19 photograph it.
20 Q. Now, in several of these photographs,
21 there are yellow placards that are depicted on
22 the crime -- for example, I'll show you on 369,
23 there's an A yellow placard; is that correct?
24 A. Correct.

**Page 33**

Q. So my question is, who is responsible for putting the markers on a crime scene?
A. I place the crime scene markers.
Q. In the time frame as far as during your investigation, when do you place those yellow markers?
A. Prior to videotaping and photographing.
Q. Did anyone assist you with placing these yellow placards on the scene?
A. No.
Q. Now, you said that you walked through the crime scene with Detectives Hackett and Alfini. Do you recall or do you remember seeing case shells of bullets on the ground?
A. I recall seeing the cartridge cases in the street.
Q. And based on your inventory and what we know, those expended shells were a Hornaday 45 automatic cartridge. Are you familiar with that type of bullet?
A. Somewhat.
Q. Based on your experience as a forensic investigator, are the Hornaday 45 automatic cartridges, are those typically only used by

**Page 34**

police officers?
MS. HARRIS: Objection, speculation, foundation. Go ahead.
THE WITNESS: To the best of my knowledge, no.
BY MR. COFFMAN:
Q. The weapon that was used in this case by Officer Fry, did you ever investigate that firearm?
A. No.
MS. HARRIS: Objection, form, vague. Go ahead.
THE WITNESS: No.
BY MR. COFFMAN:
Q. Do you have any knowledge as far as who was responsible for investigating that photograph?
A. I do not.
Q. In a police shooting, is a typical -- actually let me strike that.
In a police shooting, do you normally have the opportunity to, as a forensic investigator, take a look at the gun that was used?

**Page 35**

A. It depends on the circumstance, yes.
Q. What type of circumstances does it depend on?
A. Whether the officer's weapon is going to be recovered by myself or my partner if I had a partner.
Q. And in this case, was there a reason why you did not investigate into the weapons of the two officers that were involved in the incident?
A. My primary responsibility in this incident was processing the scene and the evidence at the scene. The officer's weapon was recovered to the best of my knowledge in the detective division area by somebody else.
Q. When you got to the accident scene, were you specifically directed by Sergeant Grant to perform just that investigation that you testified about?
MS. HARRIS: Objection, form, vague. Go ahead.
THE WITNESS: Sergeant Grant and I discussed what was going to be my responsibility in this incident, and we agreed that my primary

**Page 36**

responsibility would be to process the scene, collect the evidence, complete a sketch and complete the crime scene processing report.
BY MR. COFFMAN:
Q. Now, you testified earlier that you were directed by Detectives Alfini and Hackett to photograph and video certain objects that were found on the crime scene. I think you also mentioned that you, yourself did your own investigation of the scene. Could you tell us a little bit about what you did during your investigation?
A. I searched the scene for any additional evidence. And as I said, I also searched -- did an overview search of the interior of the vehicle.
Q. Did you locate any items during your own investigation that were not pointed out to you by Detectives Hackett and Alfini?
A. Not that I recall.
Q. So I'm going to show you, sir, photographs marked 380, 381, 382, 383. Take a second and look at those photographs. And my question for you is, can you tell us what's

Page 37:

1  depicted or what you were photographing in those
2  four documents?
3     A.  Those are photographs of what appeared
4  to be apparent bullet strikes or a bullet strike
5  on the concrete wall.
6     Q.  And can you tell us what concrete wall
7  we're looking at in those photographs or where
8  on the crime scene that's located?
9     A.  Based on my report, this brick wall was
10 approximately 2005 East 75th Street, just east
11 of the Southshore Food Market.
12    Q.  I think if we look at the photograph on
13 384, can you identify where that mark would be
14 for the record?  So we're looking at the no
15 parking sign, and I think you're pointing just
16 to the left of that on the reddish brick wall?
17    A.  Correct.
18    Q.  And there's a, it looks like, white
19 spot; is that correct?
20    A.  Correct.
21    Q.  I'm just going to circle it for
22 identification.  Is that correct?
23    A.  Correct.
24    Q.  Now, sir, on photographs 385, 86, 87,

Page 38:

1  and 88, and actually let me -- before we get to
2  those photographs, I'm just going to jump back
3  to what we talked about in photograph 384 that
4  we've circled.  Could you tell during your
5  investigation, was that bullet hole, was that a
6  fresh bullet hole or had that been there for a
7  while if you could tell?
8     MS. HARRIS:  Objection, speculation,
9  foundation.  Go ahead.
10    THE WITNESS:  First of all, I said it was an
11 apparent bullet strike.  I cannot tell whether
12 it is a bullet strike for certain or not, and I
13 cannot tell how fresh or old it is.
14 BY MR. COFFMAN:
15    Q.  As a forensic technician, is there any
16 type of test or investigation that you could
17 perform to determine the size of the bullet or
18 even if it is a bullet hole or a bullet strike?
19    A.  The material may be analyzed to
20 determine whether its components which are used
21 to manufacture bullets.
22    Q.  In this case did you attempt to take
23 any type of fragments off the brick wall?
24    A.  I did not.

Page 39:

1     Q.  I'm going to show you photographs 385,
2  386, 387 and 388.  As I asked in the previous
3  questions to you, did anyone direct you to take
4  photographs of this location or is this -- was
5  this something that you investigated on your
6  own?
7     A.  To the best of my knowledge, these
8  marks were pointed out to me.
9     Q.  And can you tell us where on the crime
10 scene these photographs are taken or taken of?
11    A.  This photograph of the apparent bullet
12 strike on the concrete wall is located on the
13 lower portion of the front entryway of the store
14 on the corner, the southeast corner.
15    Q.  Could you tell by your investigation
16 and when you took photographs if those -- if
17 that mark was fresh to the wall or if it had
18 been there?
19    MS. HARRIS:  Objection, speculation,
20 foundation.  Go ahead.
21    THE WITNESS:  I could not tell.
22 BY MR. COFFMAN:
23    Q.  And did you take any fragments or any
24 further investigation from that wall and analyze

Page 40:

1  them as part of your investigation in this case?
2     A.  I did not.
3     Q.  Now, as a part of your investigation,
4  you mentioned that you drew a diagram of the
5  scene?
6     A.  Correct.
7     Q.  Did anyone assist you in drawing that
8  diagram?
9     A.  Not that I recall.
10           (Whereupon, Deposition Exhibit
11            No. 12 was marked for
12            identification.)
13 BY MR. COFFMAN:
14    Q.  Sir, I'm going to show you what we had
15 previously marked as Exhibit No. 7.  Also I'm
16 going to give you Exhibit No. 12 at the same
17 time.  You can look at them together.
18           In Exhibit 7 and 12, is this the
19 diagram that you completed as part of your
20 investigation?
21    A.  Yes.
22    Q.  Now, Exhibit No. 12, you created a
23 legend on the bottom half of that page in which
24 you used numbers and letters.  Could you tell us

Page 41:

1  the reason why you used numbers and letters?
2  A. The numbers corresponded with the
3  numbered crime scene markers and the letters. A
4  was for the blood. C was for the cap, and S was
5  for the sweatshirt.
6  Q. And there also is noted on here, you
7  also have three vehicles identified as vehicle
8  A, vehicle B and then CPD VEH, correct?
9  A. Correct.
10 Q. When you conducted your investigation,
11 were these three vehicles still in that
12 position?
13 A. Yes.
14 Q. Now, there also are two other boxes
15 that you have drawn on your legend here --
16 excuse me -- on your diagram. One is, it looks
17 like, on 75th Street to the right before the
18 cross mark?
19 A. Yes.
20 Q. Can you tell us what that is depicting
21 or what that is supposed to depict?
22 A. That was a marked CPD vehicle that was
23 not involved that had responded after the
24 incident.

Page 42:

1  Q. And then it also looks like there's
2  another box on your diagram that is almost
3  through the intersection of 75th and Jeffery on
4  the right-hand side. Do you see that?
5  A. Yes.
6  Q. Can you describe for us what that is
7  supposed to be depicting?
8  A. That is the silver Dodge Charger
9  vehicle.
10 Q. Now, looking at your diagram that
11 you've created here, you list 1, 2, 3 and 4 as
12 cartridges that you found on the street on 75th;
13 is that correct?
14 A. Correct.
15 Q. Now, there also is another indicator on
16 number 7 on the top right-hand portion of your
17 diagram. And looking at your legend, it states
18 a copper metal fragment on the sidewalk, 49
19 feet, 6 inches north of south curb of 75th and
20 51 feet west of east curb of Jeffery. As part
21 of your investigation, did you analyze where
22 that object came from?
23 A. I did not.
24 Q. Did you ever compare that metal

Page 43:

1  fragment to the four cartridges that you found
2  on the street?
3  A. I did not.
4  Q. The measurements that are listed in
5  your legend here, did anyone assist you in
6  taking those measurements?
7  A. Not that I recall.
8  Q. Do you recall at what time you created
9  this diagram during your investigation?
10 A. The diagram would have been created
11 towards the end of my investigation after the
12 video and the photographs were taken, and some
13 of the evidence may have actually been picked up
14 to preserve it. And then I would complete the
15 sketch.
16 Q. Of any of the inventory items here
17 under legend in your diagram, did you perform
18 any type of fingerprint analysis or take any
19 print off of these items?
20 A. Not that I recall.
21 Q. As part of your forensic investigation
22 of the crime scene, did you have any
23 conversations with anyone from IPRA?
24 A. Not that I recall.

Page 44:

1  Q. Have you ever given a statement to IPRA
2  regarding your investigation?
3  A. This investigation?
4  Q. Yes.
5  A. No.
6  Q. While you were on the scene, did you
7  ever see any type of media outlets there?
8  A. I don't recall.
9  Q. Have you ever spoken to anyone of the
10 media regarding your investigation or this
11 incident?
12 A. No.
13 Q. The items that you have inventoried in
14 this case, do you know where they currently
15 exist?
16 A. I do not.
17 Q. Do you know -- actually I'm going to
18 strike that.
19 Is there any type of department
20 protocol or forensic evidence protocol as far as
21 how long you keep evidence?
22 A. It depends on the case.
23 Q. And in this case has anyone -- well,
24 actually let me back up for a second. When

McCorkle Litigation Services, Inc.
Chicago, Illinois (312) 263-0052

**Page 45**

        1    evidence is destroyed, who is responsible for
        2    taking that evidence and destroying it?
        3         MS. HARRIS: Objection, speculation,
        4    foundation. Go ahead.
        5         THE WITNESS: To the best of my knowledge,
        6    it's the evidence and recovered property
        7    personnel.
        8    BY MR. COFFMAN:
        9         Q. And in this case you mentioned that
       10    after your investigation, you took it to your
       11    office for an initial period. At any point does
       12    that move to another department or another
       13    building for the inventoried evidence?
       14         MS. HARRIS: Objection, speculation,
       15    foundation. Go ahead.
       16         THE WITNESS: Normally the evidence is
       17    removed from the evidence storage room and sent
       18    to the appropriate sections.
       19    BY MR. COFFMAN:
       20         Q. In this case do you know where the
       21    evidence has been kept?
       22         A. I do not.
       23         MR. SMOLENS: Can I ask a question?
       24         MS. HARRIS: Sure.

**Page 46**

        1         MR. SMOLENS: When you say the evidence is
        2    taken to somewhere else, there's something
        3    called ERPS, the Evidence and Recovered Property
        4    Section, at the Chicago Police Department,
        5    correct?
        6         THE WITNESS: Correct.
        7         MR. SMOLENS: So when you inventory an item,
        8    it's placed in some kind of envelope and sealed,
        9    and you said you took it back to your facility,
       10    right?
       11         THE WITNESS: Correct.
       12         MR. SMOLENS: And then at some point all the
       13    evidence isn't kept at your facility. The ERPS
       14    people either come or someone from your
       15    department comes and takes it to a different
       16    facility where it's stored?
       17         THE WITNESS: Correct.
       18         MR. SMOLENS: So if there's --
       19         THE WITNESS: Some evidence --
       20         MR. SMOLENS: I'm sorry.
       21         THE WITNESS: -- may go to the firearm
       22    section. Some evidence may go to Evidence and
       23    Recovered Property. So it's -- not all the
       24    evidence may go to it.

**Page 47**

        1         MR. SMOLENS: But --
        2         THE WITNESS: Some evidence may go to the
        3    state lab for analysis.
        4         MR. SMOLENS: And that's out of your hands.
        5    Once you inventory it, you don't get involved in
        6    whatever happens to it subsequently?
        7         THE WITNESS: Correct.
        8         MR. SMOLENS: Okay. That's what we wanted to
        9    know.
       10    BY MR. COFFMAN:
       11         Q. Do you have any knowledge based on your
       12    investigation of the weapon that was used in
       13    this case?
       14         A. I do not.
       15         Q. Are you familiar with a Sig Sauer
       16    handgun?
       17         A. I am somewhat familiar. I own a Sig
       18    Sauer nine-milliliter.
       19         Q. Okay. Do you have -- based on that
       20    knowledge, can you tell me how many bullets are
       21    contained in a magazine of the Sig Sauer?
       22         MS. HARRIS: For this particular gun in this
       23    case or just in general?
       24         MR. COFFMAN: Just in general.

**Page 48**

        1         THE WITNESS: Sig Sauer guns have several
        2    different capacity magazines. I can tell you
        3    the capacity of my magazine, but that's a
        4    nine-milliliter. I believe the weapon that was
        5    involved in this incident is a 45 automatic.
        6    There's a difference.
        7    BY MR. COFFMAN:
        8         Q. All right. So let's start with your
        9    weapon.
       10         A. My nine-milliliter has a 13 round
       11    magazine.
       12         Q. And how about the 45 Sig Sauer that was
       13    used in this incident?
       14         A. I do not know the capacity of that
       15    magazine.
       16         MR. COFFMAN: That's all I have.
       17         MS. HARRIS: All right. We'll reserve.
       18    Great. Thanks.
       19         THE COURT REPORTER: Counsel, would you like
       20    to order it?
       21         MR. COFFMAN: We'll take them.
       22         MS. HARRIS: Copy. We'll handle signature.
       23         (FURTHER DEPONENT SAITH NOT.)
       24         (Proceedings concluded at 1:02 p.m.)

## Page 49

```
 1    UNITED STATES DISTRICT COURT
 2    NORTHERN DISTRICT OF ILLINOIS
 3         EASTERN DIVISION
 4  LINDA CHATMAN, et al.,    )
 5       Plaintiff,    )
 6   vs.            ) No. 13 CV 5687
 7  THE CITY OF CHICAGO, et al.)
 8       Defendants.   )
 9       I, ERIC SZWED, being first duly sworn, on
10  oath say that I am the deponent in the aforesaid
11  deposition taken on the 8th day of October 2014;
12  that I have read the foregoing transcript of my
13  deposition and affix my signature to same.
14       _____
              ERIC SZWED
15
16
17
18
19
    Subscribed and sworn to
20
    before me this     day
21  of         , 2014
22
23  Notary Public
24
```

## Page 50

```
 1  STATE OF ILLINOIS ) SS:
 2  COUNTY OF C O O K )
 3       I, MARGARET A. RITACCO, a notary public
 4  within and for the County of Cook County and
 5  State of Illinois, do hereby certify that
 6  heretofore, to-wit, October 8, 2014, personally
 7  appeared before me, at 200 North LaSalle Street,
 8  Suite, 2900, Chicago, Illinois, ERIC SZWED, in a
 9  cause now pending and undetermined in the United
10  State District Court, Northern District of
11  Illinois, Eastern Division, Illinois, wherein
12  LINDA CHATMAN, et al., is the Plaintiff, and
13  THE CITY OF CHICAGO, et al., are the Defendants.
14       I further certify that the said
15  ERIC SZWED was first duly sworn to testify the
16  truth, the whole truth and nothing but the truth
17  in the cause aforesaid; that the testimony then
18  given by said witness was reported
19  stenographically by me in the presence of the
20  said witness, and afterwards reduced to
21  typewriting by Computer-Aided Transcription, and
22  the foregoing is a true and correct transcript
23  of the testimony so given by said witness as
24  aforesaid.
```

## Page 51

```
 1       I further certify that the signature to
 2  the foregoing deposition was reserved by counsel
 3  for the respective parties.
 4       I further certify that the taking of this
 5  deposition was pursuant to notice and that there
 6  were present at the deposition the attorneys
 7  hereinbefore mentioned.
 8       I further certify that I am not counsel
 9  for nor in any way related to the parties to
10  this suit, nor am I in any way interested in the
11  outcome thereof.
12       IN TESTIMONY WHEREOF:  I have hereunto
13  set my hand and affixed my notarial seal this
14   20th  day of October, 2014.
15
16
17
18
19  _____
20  NOTARY PUBLIC, COOK COUNTY, ILLINOIS
21  LIC. NO. 084-002796
22
23
24
```

## Page 52

```
 1  McCorkle Litigation Services, Inc.
    200 N. LaSalle Street 2900
 2  Chicago, Illinois 60601-1014
 3  October 20, 2014
 4  CITY OF CHICAGO
    ASSISTANT CORPORATION COUNSEL
 5  MS. TIFFANY HARRIS
    30 North LaSalle Street, Suite 900
 6  Chicago, Illinois 60602
 7  IN RE: Linda Chatman, et al. vs. The City of
       Chicago, et al.
 8  COURT NUMBER:  13 CV 5697
    DATE TAKEN: October 8, 2014
 9  DEPONENT:  Eric Szwed
10  Dear Ms. Harris:
11  Enclosed is the deposition transcript for the
    aforementioned deponent in the above-entitled
12  cause.  Also enclosed are additional signature
    pages, if applicable, and errata sheets.
13
    Per your agreement to secure signature, please
14  submit the transcript to the deponent for review
    and signature.  All changes or corrections must
15  be made on the errata sheets, not on the
    transcript itself.  All errata sheets should be
16  signed and all signature pages need to be signed
    and notarized.
17
    After the deponent has completed the above,
18  please return all signature pages and errata
    sheets to me at the above address, and I will
19  handle distribution to the respective parties.
20  If you have any questions, please call me at the
    phone number below.
21
22  Sincerely,
    Margaret Setina        MARGARET A. RITACCO
23  Signature Department    Court Reporter
             (312)263-0052
24  cc: ALL COUNSEL OF RECORD
```

| A | | | | | |
|---|---|---|---|---|---|
| ability | 6:2 13:20 14:1 | believe | cc | compare | 52:23 |
| 16:6 | 14:4 37:10 | 12:16 24:10 | 52:24 | 42:24 | cpd |
| aboveentitled | area | 48:4 | cedrick | compartment | 41:8 ,22 |
| 1:16 52:11 | 6:5 ,8 13:2 | best | 1:6 | 13:1 31:5 | created |
| academy | 14:11 15:17 | 11:5 34:4 | cell | complete | 40:22 42:11 |
| 6:23 7:1 | 16:10 30:16 | 35:14 39:7 | 20:21 | 18:21 36:2 ,3 | 43:8 ,10 |
| accident | 35:15 | 45:5 | cellular | 43:14 | crime |
| 35:16 | areas | better | 12:1 20:22 | completed | 7:5 ,15 ,18 |
| actual | 27:16 | 28:15 | center | 18:15 ,17 ,19 ,22 | 10:22 ,24 |
| 13:6 | arrive | bit | 27:2 | 40:19 52:17 | 14:10 16:14 |
| adapter | 14:2 ,23 28:15 | 28:15 36:11 | certain | components | 18:4 19:6 |
| 20:22 | arrived | black | 26:5 35:7 | 38:20 | 22:13 27:9 |
| addition | 13:14 14:6 | 20:21 24:11 | 38:12 | computer | 28:22 30:15 |
| 27:3 ,10 | 23:7 | 25:9 27:24 | certification | 16:20 | 32:22 33:2 ,3 |
| additional | arriving | 27:24 | 8:2 | computeraided | 33:12 36:3 ,8 |
| 7:7 8:7 16:10 | 29:4 | blood | certified | 50:21 | 37:8 39:9 |
| 36:13 52:12 | asked | 21:17 ,22 22:4 | 1:17 | concluded | 41:3 43:22 |
| additionally | 39:2 | 22:8 41:4 | certify | 48:24 | criminal |
| 18:8 | asking | bottom | 50:5 14 51:1 ,4 | concrete | 6:12 |
| address | 18:6 | 19:22 40:23 | 51:3 | 37:5 ,6 39:12 | cross |
| 52:18 | assigned | box | chances | conducted | 41:18 |
| administrator | 6:5 ,7 8:13 | 42:2 | 52:14 | 41:10 | csr |
| 1:5 | 13:15 15:3 | boxes | charge | consist | 1:23 |
| affix | 16:8 29:10 | 41:14 | 15:16 | 6:8 | curb |
| 49:13 | assist | brian | charger | consisted | 42:19 ,20 |
| affixed | 18:9 33:8 40:7 | 2:10 | 30:4 22 31:15 | 7:11 27:14 ,15 | currently |
| 51:13 | 43:5 | brick | 31:24 32:9 | contained | 44:14 |
| aforementioned | assistance | 37:9 ,16 38:23 | 32:13 42:8 | 13:2 47:21 | cv |
| 52:11 | 9:24 | building | chatman | contents | 1:9 49:6 52:8 |
| aforesaid | assistant | 45:13 | 1:4 ,7 49:4 | 31:23 | |
| 49:10 50:17 ,24 | 3:3 52:4 | bullet | 50:12 52:7 | continued | D |
| ago | assisted | 26:1 ,6 31:4 ,9 | check | 3:1 | d |
| 5:16 | 18:5 | 31:17 33:20 | 19:23 | conversation | 4:1 |
| agree | assisting | 37:4 ,4 38:5 | chicago | 12:6 14:24 | dab |
| 23:13 | 18:3 | 38:6 ,11 ,12 | 1:10 20 2:12 | conversations | 22:3 |
| agreed | assuming | 38:17 ,18 ,18 | 3:2 ,7 5:21 | 10:5 16:24 | damage |
| 35:24 | 6:22 9:8 | 39:11 | 7:14 8:17 | 24:23 43:23 | 24:17 25:1 ,7 |
| agreement | attempt | bullets | 11:8 12:23 | cook | 25:12 26:2 ,6 |
| 22:20 30:21 | 38:22 | 33:14 38:21 | 46:4 49:7 | 1:18 50:4 | 26:7 ,13 |
| 52:13 | attempted | 47:20 | 50:8 ,13 52:2 | 51:20 | 32:17 |
| ahead | 14:19 | | 52:4 ,6 ,7 | copper | dark |
| 15:19 17:21 | attended | C | circle | 21:8 42:18 | 28:6 |
| 26:4 29:7 | 6:22 | c | 37:21 | copy | database |
| 31:11 34:3 | attention | 41:4 50:2 | circled | 48:22 | 16:21 |
| 34:12 35:21 | 30:18 | call | 38:4 | corner | date |
| 38:9 39:20 | attorneys | 12:1 ,17 13:21 | circumstance | 24:22 39:14 ,14 | 11:2 23:20 |
| 45:4 ,15 | 51:6 | 13:22 31:8 | 35:1 | corporation | 52:8 |
| al | automatic | 52:20 | circumstances | 3:3 52:4 | david |
| 49:4 ,7 50:12 | 20:11 33:19 ,23 | called | 35:2 | correct | 11:6 ,7 ,19 |
| 50:13 52:7 ,7 | 48:5 | 46:3 | city | 6:24 11:16 ,17 | 17:14 18:2 |
| alfini | avenue | camera | 1:10 3:2 5:21 | 11:20 ,21 | 18:24 19:2 ,3 |
| 13:17 14:15 | 2:11 12:13 | 26:17 | 6:6 7:20 | 13:18 17:2 ,3 | 19:5 |
| 15:1 16:4 | aware | cap | 10:4 11:8 | 17:19 ,22 | day |
| 17:11 24:14 | 11:23 | 41:4 | 49:7 50:13 | 21:4 ,5 ,10 ,11 | 11:4 12:4 ,16 |
| 29:14 33:13 | | capacity | 52:4 ,7 | 21:13 ,14 ,19 | 14:17 16:2 |
| 36:6 ,19 | B | 8:17 ,23 48:2 ,3 | cityofchicago | 21:20 23:9 | 49:11 ,20 |
| allow | b | 48:14 | 3:9 ,10 | 23:10 ,15 ,16 | 51:14 |
| 28:19 | 4:7 41:8 | car | clean | 23:18 ,19 | daylight |
| ambulance | bachelors | 13:6 20:22 | 21:24 | 27:6 ,7 28:1 | 23:8 28:3 |
| 12:24 14:8 ,10 | 6:12 | card | clear | 28:2 30:24 | days |
| amount | back | 27:1 | 17:6 26:15 | 32:23 ,24 | 28:4 |
| 15:13 | 13:20 18:20 | career | 32:3 | 37:17 ,19 ,20 | dear |
| analysis | 26:22 38:2 | 9:8 | coffman | 37:22 ,23 | 52:10 |
| 43:18 47:3 | 44:24 46:9 | cartridge | 2:9 ,10 4:4 ,14 | 40:6 41:8 ,9 | defendant |
| analyze | background | 20:11 ,16 33:15 | 5:2 ,6 ,11 | 42:13 ,14 | 8:18 |
| 39:24 42:21 | 6:11 | 33:19 | 10:13 16:1 | 46:5 ,6 ,11 ,17 | defendants |
| analyzed | barkowski | cartridges | 18:1 19:11 | 47:7 50:22 | 1:14 3:11 49:8 |
| 38:19 | 2:16 | 20:13 33:24 | 22:20 23:1 | corrections | 50:13 |
| anybody | based | 42:12 43:1 | 24:5 ,6 26:9 | 52:14 | degree |
| 20:6 | 13:4 ,24 14:4 | case | 31:13 34:6 | corresponded | 6:12 |
| apparent | 16:24 25:22 | 5:18 8:19 ,20 | 34:14 36:4 | 41:2 | degrees |
| 22:3 37:4 | 27:22 33:17 | 8:22 9:3 ,15 | 38:14 39:22 | cotton | 8:2 |
| 38:11 39:11 | 33:22 37:9 | 9:20 16:11 | 40:13 45:8 | 22:1 ,2 | department |
| appearances | 47:11 ,19 | 22:4 27:13 | 45:19 47:10 | counsel | 6:21 7:14 11:9 |
| 2:1 3:1 | basic | 29:2 ,13 | 47:24 48:7 | 3:3 48:19 51:2 | 12:24 44:19 |
| appeared | 7:4 | 33:14 34:7 | 48:16 ,21 | 51:8 52:4 ,24 | 45:12 46:4 |
| 31:4 37:3 50:7 | bates | 35:7 38:22 | collect | county | 46:15 52:23 |
| applicable | 10:16 19:14 | 40:1 44:14 | 36:2 | 1:18 50:2 ,4 ,4 | depend |
| 52:12 | 22:18 30:19 | 44:22 ,23 | colonial | 51:20 | 35:3 |
| appropriate | battery | 45:9 ,20 | 2:4 ,17 | couple | depends |
| 45:18 | 9:5 ,9 ,18 10:1 | 47:13 ,23 | com | 5:16 28:12 | 35:1 44:22 |
| approved | bccoffmanlaw | cases | 2:7 ,14 | course | depict |
| 18:24 | 2:14 | 20:16 33:15 | come | 15:10 | 30:22 41:21 |
| approximately | behalf | cause | 11:23 46:14 | court | depicted |
| | 2:20 3:11 | 1:16 50:9 ,17 | comes | 1:1 48:19 49:1 | 23:14 24:9 |
| | | 52:12 | 46:15 | 50:10 52:8 | 25:1 ,6 ,24 |

```
                28:8   31:2         50:11                7:17   8:13           14:14  19:21      given                 48:22  52:5
                32:21  37:1       document               9:23  15:5 ,21        21:24  23:12      5:12  44:1            52:10
            depicting             10:16 ,21  15:22      16:5 ,7 ,9             27:23  38:10      50:18 ,23           held
              41:20  42:7           18:16 ,21 ,23       20:16  27:16           49:9  50:15     gives                   5:24  21:3 ,12
            deponent                19:15 ,18           32:17  35:13         flip                 18:13              help
              48:23  49:10          20:19               36:2 ,14               16:18  24:2 ,2   giving                 18:6
              52:9 ,11 ,14        documented            43:13  44:20         flipping            10:8                hereinbefore
              52:17                 22:14               44:21  45:1 ,2         23:2  11          gloves                51:7
            deposition            documents             45:6 ,13 ,16         follow              22:1                heretofore
              1:15  5:12  9:1       9:21  18:11         45:17 ,21              28:18            gmail                  50:6
              9:16  10:10          37:2                 46:1 ,3 ,13 ,19      follows             2:14                hereunto
              10:19  19,8        dodge                  46:22 ,22 ,24          5:9              go                     51:12
              40:10  49:11         30:3 ,22  31:5       47:2                 food                 15:18  17:21       hes
              49:13  51:2 ,5       31:15 ,24          exactly                  37:11              18:20  19:22         11:10
              51:6  52:11          32:9 ,13  42:8       29:16                force                20:18  21:6        hold
            describe              doing                examination             7:6                26:4  29:7           19:24  20:2 ,4
              12:21  24:8          15:11                4:2  5:10             foregoing           31:11  34:3        hole
              25:5  31:1          dont                  examined               49:12  50:22       34:11  35:20         31:4 ,9  38:5 ,6
              42:6                 5:19  9:10  12:4     5:8                    51:22              38:9  39:20          38:18
            description             12:16  14:9       example                 forensic            45:4 ,15          homan
              20:9 ,20  21:16       15:9  17:15         32:22                  6:3  ":3 ,7 ,14    46:21 ,22 ,24       12:12
            desk                    29:5 ,16 ,16      excuse                   8:8  11:10 ,16     47:2              hood
              12:2 ,7               29:24  30:9         41:16                  12:18 ,20 ,21    going                  31:5 ,16  32:12
            destroyed               44:8  47:5        exhibit                  15:17  17:7 ,8     10:7 ,14  25:4       32:18
              20:7  45:1          door                  4:9  10:10 ,15         19:4  25:22        32:5  35:4 ,23    hornaday
            destroying             25:8  26:10 ,12     10:17  11:13            33:22  34:22       36:21  37:21        20:10  33:18 ,23
              45:2                download              13:4  16:12            38:15  43:21       38:2  39:1        hospital
            detail                  26:21 ,23           16:19  19:8            44:20              40:14 ,16           14:22
              32:6                drawing               19:13 ,16 ,21        form                 44:17             hotmail
            detailed                40:7                22:17  23:3            15:18  34:11     graduated             2:7
              8:9                 drawn                 40:10 ,15 ,16          35:20              6:17              hour
            detected                41:15               40:18 ,22            formal              graduation            1:19
              25:12               drew                exhibits                 6:18               6:19              hours
            detective               40:4                4:14                 forward             grant                 14:1 ,5  28:13
              13:16 ,17  17:1     drive                exist                   14:14              11:6 ,19  16:4    humboldt
              24:14  29:14         13:5                 44:15                forwarded            17:15  18:2         6:9
              29:14  35:15        drove                exited                  27:2               35:17 ,22
            detectives              17:7                14:19                found               grants             ─────────────────
              13:15  14:15 ,24    duly                expended                 16:9  21:23        11:7                       I
              15:3  16:4 ,8        5:1 ,8  49:9         20:10  33:18           22:12  31:18     great              ─────────────────
              17:11  28:17         50:15              experience                36:8  42:12       48:18             idea
              28:21  29:10        duty                  25:22  33:22           43:1              ground               15:15
              33:12  36:6          12:11              explain                 foundation          33:14             identification
              36:19                                     7:10  20:3             26:4  31:11      group                 4:8  10:12 ,15
            determine            ─────────────────       27:19                 34:3  38:9         22:17  23:2         19:10 ,13
              38:17 ,20                   E           exterior                 39:20  45:4      guess                 22:18  37:22
            diagram             ─────────────────       25:8                   45:15              8:11  11:7          40:12
              40:4 ,8 ,19       e                                             four               gun                 identified
              41:16  42:2         4:1 ,7             ─────────────────         7:21  20:10        34:23  47:22        41:7
              42:10 ,17         earlier                      F                 30:18  21         guns                identify
              43:9 ,10 ,17        36:5               ─────────────────         37:2  43:1         32:8  48:1          15:21  37:13
            didnt                early               f                        fragment                               ill
              22:6                28:6                 2:2 ,3                  21:9  42:18     ─────────────────      19:12  32:22
            difference           east                facility                  43:1                      H           illinois
              48:6                37:10 ,10  42:20     46:9 ,13 ,16          fragments        ─────────────────       1:2 ,18 ,20  2:5
            different            eastern             fair                      31:17  38:23    h                      2:12 ,18  3:7
              46:15  48:2         1:3  49:3  50:11     17:16                   39:23            4:7                   7:17 ,22  49:2
            digital              education           familiar                 frame             hackett                50:1 ,5 ,8 ,11
              23:17  26:19        6:11 ,18  7:11       33:19  47:15 ,17        7:24  29:15       13:17  14:15 ,24     50:11  51:20
            direct               either              far                       33:4              16:4  17:11          52:2 ,6
              25:11  29:24        28:19  29:14         15:2  25:12           fresh               20:1  21:3 ,13     im
              30:18  39:3         46:14                28:18  29:22            31:9 ,9  38:6 ,13 24:14  29:14         6:22  9:8  10:14
            directed             enclosed              32:4  33:4              39:17             33:12  36:6          15:15  25:4
              24:14 ,16 ,18       52:11 ,12            34:15  44:20          friel               36:19                28:14  36:21
              30:7 ,10            engine             fast                      18:24  24  19:2  half                  37:21  38:2
              35:17  36:6         31:5                 14:14                   19:3 ,5           40:23                39:1  40:14
            directing             entryway           federal                 front              hand                  40:15  44:17
              16:4                39:13                5:17                    24:11  25:8       51:13                46:20
            discovery            envelope            feet                      39:13           handgun              immediate
              1:15                26:24  27:1          42:19 ,20             fry                 47:16                11:3
            discussed              46:8              fill                      1:11  3:12  9:20 handle              immediately
              35:22              equipment             19:19  26:24            17:13  34:8       25:8  26:12          12:19
            discussion             8:10  13:2        filled                  further              48:22  52:19      inches
              17:10              eric                  9:9                     39:24  43:23    hands                  42:19
            discussions            1:15  4:3  5:4 ,4 filling                   50:14  51:1 ,4    47:4               incident
              17:12                5:7  49:9 ,14       10:1 ,24                51:8            happened               11:2 ,23  16:21
            distilled              50:8 ,15  52:9    fingerprint                                 14:16                25:21  35:10
              22:2 ,3            erps                  43:18                 ─────────────────  happens                35:12 ,24
            distribution           46:3 ,13          fire                             G          47:6                 41:24  44:11
              52:19              errata                12:23  14:7 ,9       ─────────────────   harris                48:5 ,13
            district               52:12 ,15 ,15 ,18 firearm                 general              3:4 ,9  15:18     included
              1:1 ,2  6:7  49:1  estate                34:9  46:21             47:23  24          17:20  22:23        7:24
              49:2  50:10         1:6                 fired                  generally            24:4  26:3        indicates
              50:10              et                    14:20                   9:23               31:10  34:2         17:5
            division              49:4 ,7  50:12     first                   generated            34:11  35:20      indicator
              1:3  35:15  49:3     50:13  52:7 ,7      5:8  10:22              9:15 ,19           38:8  39:19         42:15
                                 evidence              11:12 ,22             give                 45:3 ,14 ,24     individuals
                                   6:2  7:2 ,8 ,12    13:12 ,13              6:10  9:1  40:16    47:22  48:17         17:12
```

information
  15:14  16:23
inhouse
  8:5 ,6
initial
  13:22  28:16
  45:11
input
  9:24
inside
  30:15  31:18 ,22
  32:9 ,13
interested
  51:10
interior
  32:2  36:15
intersection
  14:11  24:22
  30:14  42:3
inventoried
  20:5  21:8
  44:13  45:13
inventory
  16:13  19:17 ,17
  20:8 ,15 ,19
  21:6 ,15  28:9
  31:23  33:17
  43:16  46:7
  47:5
inverness
  2:5 ,18
investigate
  16:6  34:8  35:8
investigated
  39:5
investigating
  11:14  34:16
investigation
  15:2 ,11 ,12 ,17
  16:3  17:2 ,13
  17:18  18:3
  19:6 ,19 ,24
  20:2 ,4 ,14
  21:3 ,13  22:7
  22:11  23:5
  23:17  24:13
  25:24  27:4
  28:19 ,23
  29:3 ,8  30:2
  30:23  31:8
  31:14  32:7
  32:12  33:5
  35:18  36:10
  36:12 ,18
  38:5 ,16
  39:15 ,24
  40:1 ,3 ,20
  41:10  42:21
  43:9 ,11 ,21
  44:2 ,3 ,10
  45:10  47:12
investigations
  27:10
investigator
  6:3  8:8  11:16
  25:23  33:23
  34:23
involved
  16:15  17:17
  28:20  35:9
  41:23  47:5
  48:5
ipra
  43:23  44:1
isnt
  46:13
item
  21:7 ,12  46:7
items
  16:13  20:5
  36:17  43:16
  43:19  44:13

---
J

january
  11:3  13:21

  18:14  28:4
jeep
  24:7 ,11  25:9
  27:24 ,24
jeffery
  14:12  30:14
  42:3 ,20
jill
  3:5 ,10
jump
  38:2
justice
  6:13

---
K

k
  50:2
keep
  44:21
kept
  45:21  46:13
kevin
  1:11  3:12
kind
  8:20  18:6  46:8
know
  5:18 ,19  7:19
  9:5 ,11  19:5
  23:21 ,21
  24:1 ,19
  25:15  26:2
  29:2 ,11 ,16
  29:18 ,21 ,24
  33:18  44:14
  44:17  45:20
  47:9  48:14
knowing
  32:4
knowledge
  11:5  34:4 ,15
  35:14  39:7
  45:5  47:11
  47:20
known
  1:13

---
L

l
  2:16
lab
  7:17  47:3
lasalle
  1:20  3:6  50:7
  52:1 ,5
latex
  21:24
law
  2:9
lawyers
  10:4
left
  19:23  37:16
legend
  40:23  41:15
  42:17  43:5
  43:17
length
  29:22
letters
  40:24  41:1 ,3
lic
  51:21
license
  1:24  30:4
linda
  1:4  49:4  50:12
  52:7
list
  9:2  11:20
  42:11
listed
  11:13 ,19  16:13
  16:14  43:4
litigation
  52:1

little
  28:15  36:11
locate
  15:21  36:17
located
  15:5  22:4
  24:21  30:12
  37:8  39:12
location
  12:8  39:4
lockers
  13:1
long
  5:20  7:19 ,23
  29:2 ,18
  44:21
look
  11:12  12:22
  19:15  30:20
  34:23  36:23
  37:12  40:17
looking
  32:13  37:7 ,14
  42:10 ,17
looks
  11:18  13:4
  18:12  19:1
  19:24  20:9
  21:2 ,8 ,17
  30:2  37:18
  41:16  42:1
lot
  24:22
lou
  1:10  3:12
lower
  39:13
loyola
  6:15

---
M

m
  1:19  48:24
magazine
  47:21  48:3 ,11
  48:15
magazines
  48:2
manufacture
  38:21
margaret
  1:17 ,23  50:3
  52:22 ,22
mark
  2:2 ,3  37:13
  39:17  41:18
marked
  10:11 ,15  19:9
  19:12  20:19
  22:17  36:22
  40:11 ,15
  41:22
markers
  33:2 ,3 ,6  41:3
market
  37:11
marks
  26:14  39:8
material
  38:19
materials
  9:2  10:18
matter
  22:22
mccorkle
  52:1
measurements
  43:4 ,6
media
  44:7 ,10
memory
  27:1
mentioned
  11:19  23:7
  27:5  36:9
  40:4  45:9

  51:7
met
  13:14
metal
  21:8  42:18 ,24
military
  18:14
minutes
  19:1
mirror
  24:10  26:10 ,12
mischaracte...
  17:20
moister
  22:2
months
  5:16
move
  45:12

---
N

n
  4:1  52:1
name
  5:3 ,4  11:15
  18:12
named
  8:18
names
  11:14
narrate
  27:19
narrative
  16:16 ,18  17:4
need
  18:6  52:16
needed
  18:8  25:18
new
  7:4
nicole
  2:16
nighttime
  23:14
nikon
  26:19
nine
  6:1 ,4  8:12
  19:1
ninemilliliter
  47:18  48:4 ,10
normally
  12:10  15:10
  34:21  45:16
north
  1:19  3:6  42:19
  50:7  52:5
northeast
  24:22
northern
  1:2  49:2  50:10
northwest
  30:13
nos
  10:11
notarial
  51:13
notarized
  52:16
notary
  49:23  50:3
  51:21
noted
  41:6
notes
  15:8 ,9 ,11 ,14
notice
  1:21  51:5
number
  4:8  13:13
  19:17  20:19
  21:6 ,15
  42:10  52:8
  52:20
numbered

  41:3
numbers
  40:24  41:1 ,2

---
O

o
  50:2 ,2
oath
  49:10
object
  42:22
objection
  15:18  17:20
  26:3  31:10
  34:2 ,11
  35:20  38:8
  39:19  45:3
  45:14
objects
  23:5  28:8 ,9
  36:7
obtain
  6:14
obvious
  26:13
october
  1:18  49:11
  50:6  51:14
  52:3 ,8
office
  2:2  12:12  17:9
  18:22  26:22
  45:11
officer
  5:20  6:1 ,5
  8:18 ,23  9:5
  9:9 ,18  12:2
  12:7  21:3 ,13
  23:3  29:7
  34:8
officers
  9:19  10:1
  11:14  14:12
  14:18 ,20
  17:17  28:20
  34:1  35:4 ,9
  35:13
offices
  2:9
okay
  17:10  29:7 ,11
  29:13 ,17
  47:8 ,19
old
  38:13
once
  1:19  3:6  42:19
  50:7  52:5
open
  31:16
opened
  32:12
opportunity
  34:22
order
  48:20
org
  3:9 ,10
outcome
  51:11
outlets
  44:7
outside
  23:8
overall
  32:1
overlooked
  16:11
overview
  36:15
owner
  24:24

---
P

p
  48:24

package
  20:15
packet
  24:3
page
  11:13  16:19
  18:11  19:21
  19:22 ,23
  20:18  21:6
  21:15  40:23
pager
  20:21
pages
  21:2  23:12
  52:12 ,16 ,18
park
  6:9 ,9
parking
  24:21  37:15
parkway
  2:4 ,17
part
  15:2  22:7
  27:18  30:2
  31:14  40:1 ,3
  40:19  42:20
  43:21
particular
  12:16  16:2
  47:22
parties
  51:3 ,9  52:19
partner
  35:5 ,6
passenger
  25:8
passengers
  24:11  26:7 ,14
patrick
  20:1
patrol
  6:1 ,5
patrolman
  8:12
pending
  50:9
people
  11:20  46:14
perform
  35:18  38:17
  43:17
performing
  15:6
period
  7:20 ,23  45:11
personally
  26:23  50:6
personnel
  45:7
phone
  12:1 ,2  13:21
  13:22  20:21
  20:22  52:20
photo
  26:24
photograph
  15:22  24:9 ,16
  32:19  34:17
  36:7  37:12
  38:3  39:11
photographing
  33:7  37:1
photographs
  9:4  22:21  23:4
  23:13 ,18 ,20
  23:22 ,24
  24:15 ,20
  25:1 ,5 ,6 ,7
  25:12 ,18
  26:1 ,16 ,18
  26:21  27:3
  27:11 ,17 ,22
  27:23  28:7
  28:10 ,13
  30:1 ,3 ,8 ,12
  30:19 ,22

3

McCorkle Litigation Services, Inc.
Chicago, Illinois  (312) 263-0052

31:2 ,15
32:11 ,16 ,20
36:22 ,23
37:3 ,7 ,24
38:2   39:1 ,4
39:10 ,16
43:12
photography
27:2
photos
16:14   22:15 ,16
23:14   25:13
26:24
physically
18:9
picked
43:13
picture
24:7
placard
32:23
placards
32:21   33:9
place
20:16   33:3 ,5
placed
27:1   46:8
placing
33:8
plain
32:9
plaintiff
1:8 ,13   2:20
49:5   50:12
plates
30:4
please
5:2   52:13 ,18
52:20
point
15:4   29:9
45:11   46:12
pointed
16:8   36:18
39:8
pointing
37:15
police
5:20   6:23   7:1
7:14 ,17   8:17
8:23   11:8
13:6   34:1 ,19
34:21   46:4
policeinvolved
12:8
portion
16:18   17:4
30:13   39:13
42:16
position
11:8   41:12
positions
5:24
potential
15:4
presence
50:19
present
14:8   51:6
presently
1:12
preserve
43:14
previous
21:1   39:2
previously
40:15
primary
35:11 ,24
print
43:19
prior
7:12   8:7   33:7
proceedings
48:24
process

15:20   36:1
processed
32:5
processing
7:15 ,18   10:22
10:24   18:7
29:11   35:12
36:3
promoted
7:12   8:8 ,15
properties
21:2
property
19:16   20:6 ,9
20:20   21:16
45:6   46:3 ,23
protecting
14:13
protocol
28:17   44:20 ,20
public
49:23   50:3
51:20
purposes
10:16   19:13
22:18
pursuant
1:21   51:5
put
21:24
putting
33:2

Q

quantify
22:8 ,12
quantity
21:17
question
8:11   10:23
25:10   27:21
33:1   36:24
45:23
questions
39:3   52:20
quick
6:10   25:3
quickly
5:23

R

r
18:24
read
49:12
real
25:3
rear
12:24
reason
20:1   25:17
32:15   35:7
41:1
recall
9:10   12:4 ,5
13:19   14:6 ,9
14:10   15:9
17:15   19:7
24:13 ,16 ,18
25:16 ,17 ,19
27:13   29:5
29:16 ,20
30:7 ,9 ,11
33:13 ,15
36:20   40:9
43:7 ,8 ,20 ,24
44:8
receive
8:1
received
7:13 ,16   8:7
12:1 ,17
13:21 ,24
21:9
record

5:3   37:14
52:24
recorded
29:21
recover
15:23
recovered
35:5 ,14   45:6
46:3 ,23
recruit
7:4
reddish
37:16
reduced
50:20
regarding
5:17   7:5 ,15 ,17
10:6   14:16
16:21   24:24
44:2 ,10
related
51:9
released
20:5
relocated
32:5
remember
14:17   28:3 ,10
30:5   33:13
removed
14:21   45:17
report
9:3 ,6 ,9 ,12 ,15
9:19   10:1 ,2
10:22 ,24
13:24   14:4
18:17 ,23
22:6   29:22
36:3   37:9
reported
1:23   50:18
reporter
1:18   48:19
52:23
requested
8:14   11:23
reserve
48:17
reserved
51:2
respective
51:3   52:19
responded
12:9 ,19   41:23
responding
18:5
response
9:11 ,14   10:2
responsibility
15:20   35:11 ,23
36:1
responsible
10:23   33:1
34:16   45:1
resume
6:10
retained
4:14
retraining
6:20
return
52:18
review
9:14 ,20   52:14
reviewed
9:2 ,3   10:18
right
25:4   41:17
46:10   48:8
48:17
righthand
42:4 ,16
ritacco
1:17 ,23   50:3
52:22
room

20:17   45:17
roped
30:15
round
48:10
run
5:23
russell
3:5 ,10
ryansmolens...
2:7

S

s
4:7   41:4
saith
48:23
sample
21:22
sauer
47:15 ,18 ,21
48:   ,12
saw
22:8
says
19:23
scene
9:4   10:22 ,24
11:14   12:15
12:19   13:6
13:12 ,14
14:3 ,7 ,10 ,13
14:23   15:4 ,5
15:7 ,16 ,21
16:10 ,14
17:   ,13   18:4
18:6 ,7 ,20
19:6   22:13
23:4 ,8   25:11
26:18   27:5 ,9
27:14   28:8
28:16 ,22
29:4 ,6 ,12 ,19
30:15 ,23
33:2 ,3 ,9 ,22
35:12 ,13 ,16
36:1 ,3 ,8 ,10
36:13   37:8
39:10   40:5
41:0   43:22
44:6
scenes
7:5 ,15 ,18
score
8:16
scrapes
26:14
screen
16:21
seal
51:13
sealed
46:8
search
16:10   32:1
36:15
searched
36:13 ,14
second
13:20   19:15
36:23   44:24
section
17:9   46:4 ,22
sections
45:18
secure
52:13
see
11:15   16:16
20:11 ,23
22:6   25:3
27:22   28:2
31:17 ,20
32:3 ,7   42:4
44:7
seeing

14:9 ,10   33:13
33:15
sent
45:17
sergeant
11:6 ,10 ,19
16:3   17:14
18:2   19:3
35:17 ,22
services
7:14   11:11
17:8   19:4
52:1
set
51:13
setina
52:22
sheets
52:12 ,15 ,15 ,18
sheffield
2:11
shells
20:10   33:14 ,18
shooting
12:8   28:20
34:19 ,21
shorter
28:4
shorthand
1:17
shortly
18:18
show
10:14   19:12
23:23   25:4
32:22   36:21
39:1   40:14
showing
27:19
shown
27:16
side
19:23   24:10 ,11
25:8   26:7 ,15
42:4
sidewalk
21:9   42:18
sig
47:15 ,17 ,21
48:1 ,12
sign
37:15
signature
48:22   49:13
51:1   52:12
52:13 ,14 ,16
52:18 ,23
signed
52:16 ,16
significant
15:13
silver
30:3 ,22   31:15
31:24   42:8
similar
12:23
sincerely
52:22
sir
5:2 ,6   8:19
10:14   11:22
19:14   20:19
25:4   27:21
30:21   36:21
37:24   40:14
six
6:3
size
38:17
sketch
9:4   36:2   43:15
slash
20:21
small
13:1
smolens

2:2 ,3   45:23
46:1 ,7 ,12 ,18
46:20   47:1 ,4
47:8
somebody
35:15
somewhat
33:21   47:17
sorry
46:20
sound
27:20
south
12:12   42:19
southeast
39:14
southshore
37:11
speak
17:17 ,22   28:16
special
1:5   7:2
specialized
8:9
specific
8:21   16:5
specifically
25:11   30:9
35:17
speculation
26:3   31:10
34:2   38:8
39:19   45:3
45:14
spell
5:3
spoke
14:15
spoken
17:14   44:9
spot
37:19
ss
50:1
stamp
18:13   30:19
stamped
10:17   19:14
22:18   23:20
23:21
star
18:13
start
29:8   48:8
started
23:11   29:3
state
5:2 ,18   7:17 ,22
47:3   50:1 ,5
50:10
stated
14:18
statement
44:1
states
1:1   42:17   49:1
station
12:14 ,17   18:20
stationed
12:10   14:13
stenographi...
50:19
step
15:1
sterile
22:1
stop
14:19
storage
13:1   20:17
45:17
store
39:13
stored
20:13   46:16
street

McCorkle Litigation Services, Inc.
Chicago, Illinois (312) 263-0052

1:20 3:6
12:18 14:12
21:10 ,18 ,23
22:5 ,9 30:14
33:16 37:10
41:17 42:12
43:2 50:7
52:1 ,5
strike
29:1 34:20
37:4 38:11
38:12 ,18
39:12 44:18
strikes
37:4
striking
14:21
struck
25:20
subject
14:19 ,21
submit
52:14
submitted
18:12 19:1
subscribed
49:19
subsequently
47:6
substance
12:5
substances
22:12
sued
8:22
suit
51:10
suite
1:20 2:4 ,11
3:6 50:8
52:5
summary
14:18
supervisor
11:4
supervisors
10:6
supposed
41:21 42:7
sure
17:6 28:5
30:21 45:24
surrounding
14:11
suv
24:12 25:9
swabs
21:17 22:1 ,2
sweatshirt
41:5
swipe
26:14
sworn
5:1 ,8 49:9 ,19
50:15
system
23:23 26:20
szwed
1:15 4:3 ,9 5:4
5:5 ,7 29:8
49:9 ,14 50:8
50:15 52:9

T

t
4:7
tactical
9:11 ,14
take
15:1 ,11 ,14
19:14 21:21
21:22 22:16
23:17 24:15
25:11 ,18
26:17 27:10
30:8 ,20

31:23 32:11
32:15 34:23
36:22 38:22
39:3 ,23
43:18 48:21
taken
1:16 21:18 ,18
22:22 23:24
28:11 ,12
39:10 ,10
43:12 46:2
49:11 52:8
takes
46:15
talk
13:13
talked
26:11 28:9
38:3
talking
10:4
tape
14:10
team
8:13
tech
8:13 9:23
technical
10:2
technician
6:2 7:2 ,8 ,13
38:15
technicians
11:15
tell
21:21 25:23
27:8 31:1 ,7
36:10 ,24
37:6 38:4 ,7
38:11 ,13
39:9 ,15 ,21
40:24 41:20
47:20 48:2
test
8:15 ,16 38:16
testified
5:9 35:19 36:5
testify
50:15
testimony
10:7 17:21
50:17 ,23
51:12
thank
5:6
thanks
48:18
thats
9:19 17:9 25:1
32:4 37:8
47:4 ,8 48:3
48:16
thereof
51:11
theres
16:13 19:17 ,24
20:21 27:20
32:23 37:18
42:1 46:2 ,18
48:6
theyre
23:22
thing
9:18 21:1
think
11:18 22:20
27:5 36:8
37:12 ,15
third
20:18
three
6:2 7:21 25:6
26:1 41:7 ,11
threepage
10:16 ,17 16:12
tiffany

3:4 ,9 52:5
time
5:15 7:16 ,24
13:19 14:2
17:18 18:13
18:14 ,18
23:20 25:20
29:15 ,17
33:4 40:17
43:8
tip
22:1 ,2
title
10:21
titled
19:16
today
9:16 10:5
todays
9:1 10:7 ,19
told
12:7 25:17 ,19
top
42:16
toth
8:13
1:11 3:12 9:19
17:17
towit
50:6
training
7:2 ,5 ,7 ,13 ,16
7:19 ,23 8:3
8:6 ,7 ,9
transcript
49:12 50:22
52:11 ,14 ,15
transcription
50:21
truck
14:7 ,9
true
50:22
truth
50:16 ,16 ,16
try
31:16
trying
15:15 28:14
turn
32:7
two
17:17 21:1
35:9 41:14
type
7:2 8:1 ,2 9:24
15:8 22:12
23:23 26:17
31:17 32:8
33:20 35:2
38:16 ,23
43:18 44:7
44:19
typed
16:20
typewriting
50:21
typical
47:8
typically
22:11 27:9
33:24

U

unauthorized
20:6
underside
32:18
understand
28:14
undetermined
50:9
unit
7:14 11:11
13:5 ,6 17:5
17:8 20:17
united

1:1 49:1 50:9
units
19:4
university
6:15
use
8:9 22:1 26:17

V

vague
15:18 34:11
35:20
veh
41:8
vehicle
12:18 ,20 ,21
13:3 ,10
14:9 ,20
17:6 ,7 20:22
24:5 ,17 ,19
24:21 ,24
25:9 26:2 ,7
26:5 28:13
30:8 ,11 31:6
31:22 32:2 ,2
32:5 36:16
41:7 ,8 ,22
42:9
vehicles
16:15 23:4
31:6 41:7
41:1
video
27:6 ,10 ,14 ,18
27:20 29:18
36:7 43:12
videos
27:15
videotape
15:22
videotaping
33:7
view
24:10 32:3 ,9
vs
1:9 49:5 52:7

W

w
2:10
waited
29:3
walk
15:3
walked
33:11
walkthrough
15:7 28:21
wall
37:5 ,5 ,9 ,16
38:23 39:12
39:17 ,24
want
17:5
wanted
47:8
water
22:2 ,3
way
51:9 ,10
weapon
34:7 35:4 ,13
47:12 48:4 ,9
weapons
32:3 ,3 35:8
weeks
7:21
went
32:4
west
2:4 ,1 42:20
weve
10:14 19:12
22:16 26:10
38:4

whats
36:24
whereof
51:12
white
20:22 37:18
wicker
6:9
wisconsin
30:4
witness
4:2 5:1 ,4
15:20 17:22
26:5 31:12
34:4 ,13
35:22 38:10
39:21 45:5
45:16 46:6
46:11 ,17 ,19
46:21 47:2 ,7
48:1 50:18
50:20 ,23
work
13:1
wound
31:9

X

x
4:1 ,7 20:1

Y

year
6:16
years
5:22 ,24 6:1 ,3
6:3 ,4 7:6
8:12
yellow
32:21 ,23 33:5
33:9
youre
10:7 12:11
23:2 27:19
31:2 37:15
youve
5:24 30:1
42:11

Z

0

02
48:24
084002796
1:24 51:21

1

1
2:11 18:14
42:11 48:24
10
4:10 ,11 ,11
10:11 ,15
13:4 16:12
1011
12:12
11
1:19 4:12 19:9
19:13 ,21
12
4:13 40:11 ,16
40:18 ,22
12802481
19:18 20:8
12802495
20:20
12802496
21:7
12802501
21:16
13
1:9 48:10 49:6
52:8

14
7:6 14:1 ,4
14th
6:7
1627
2:4
1637
2:17
177
17:5 ,8
187
19:14 ,22
189
20:19
19
4:12 5:22 ,24
191
21:6
193
21:15
194
19:14
1958
21:9

2

2
42:11
20
14:1 23:12
52:3
200
1:19 50:7 52:1
2005
37:10
2013
11:3 13:21
18:14
2014
1:19 49:11 ,21
50:6 51:14
52:3 ,8
20th
51:14
2615
2:11
2630052
52:23
2900
1:20 50:8 52:1

3

3
16:19 18:11
42:11
30
3:6 23:12 52:5
301
2:4
312
3:8 52:23
330
22:19
3481295
2:13
356
30:19
357
30:19
358
30:19
359
30:20
369
32:22
380
36:22
381
36:22
382
36:22
383
36:22
384
37:13 38:3

| | |
|---|---|
| 385 | |
| 37:24 | 39:1 |
| 386 | |
| 39:2 | |
| 387 | |
| 39:2 | |
| 388 | |
| 39:2 | |

**4**

| | |
|---|---|
| 4 | |
| 42:11 | |
| 40 | |
| 4:13 | |
| 40d | |
| 26:19 | |
| 433 | |
| 24:3 ,4 ,5 ,8 | |
| 437 | |
| 25:5 | |
| 438 | |
| 25:5 | |
| 439 | |
| 25:5 | |
| 443 | |
| 24:4 | |
| 445 | |
| 22:19 | |
| 45 | |
| 20:10 | 33:18 ,23 |
| 48:5 ,12 | |
| 47 | |
| 18:14 | |
| 49 | |
| 42:18 | |

**5**

| | |
|---|---|
| 5 | |
| 4:4 | |
| 50 | |
| 14:4 | |
| 51 | |
| 42:20 | |
| 54 | |
| 1:19 | |
| 5687 | |
| 49:6 | |
| 5697 | |
| 1:9 | 52:8 |
| 5804982 | |
| 2:6 | |

**6**

| | |
|---|---|
| 6 | |
| 42:19 | |
| 60067 | |
| 2:5 ,18 | |
| 606011014 | |
| 52:2 | |
| 60602 | |
| 3:7 | 52:6 |
| 60614 | |
| 2:12 | |

**7**

| | |
|---|---|
| 7 | |
| 11:3 | 13:21 |
| 40:15 ,18 | |
| 42:16 | |
| 7427030 | |
| 3:8 | |
| 7588591 | |
| 2:19 | |
| 75th | |
| 14:12 | 21:10 |
| 30:14 | 37:10 |
| 41:17 | 42:3 |
| 42:12 ,19 | |
| 773 | |
| 2:6 ,13 | |
| 784 | |
| 10:17 | |
| 786 | |
| 10:17 | |

**8**

| | |
|---|---|
| 8 | |
| 1:18 | 50:6 | 52:8 |
| 800 | |
| 2:19 | |
| 86 | |
| 37:24 | |
| 87 | |
| 37:24 | |
| 88 | |
| 38:1 | |
| 8th | |
| 18:14 | 49:11 |

**9**

| | |
|---|---|
| 9 | |
| 4:10 | 10:11 |
| 22:17 | 23:3 |
| 900 | |
| 3:6 | 52:5 |
| 94 | |
| 6:17 | |