# The Washington Post

True Crime

# Defense expert in John Geer case says police shooting was reasonable

By **Tom Jackman**  April 12

Lawyers for former Fairfax County police Officer Adam D. Torres have hired an expert to testify that Torres' fatal shooting of John B. Geer in 2013 was "objectively reasonable" and that "Geer's own behavior...played a major role in Officer Torres' use of force against him."

Torres faces a murder trial next week, and Fairfax Commonwealth's Attorney Raymond F. Morrogh argued Monday that if the expert offered such an opinion, "in essence the witness would be sitting as a 13th juror and I think would have an undue and prejudicial effect on the jury." Morrogh noted that Virginia law does not allow experts to testify on "the ultimate fact at issue...the expert's opinion reads like a closing argument" for Torres.

The expert, veteran gun expert and police trainer Emanuel Kapelsohn of Fogelsville, Pa., submitted a 20-page analysis of the case, which Torres's lawyers said would not be used in the trial. Fairfax Circuit Court Judge Robert J. Smith went through the report Monday morning and ruled Kapelsohn could not testify on many of the points raised in it, including his conclusion that Torres's actions were reasonable.

"He can't say it that way," Smith said.

So what would Kapelsohn's testimony ultimately be? Morrogh asked. Defense lawyer John F. Carroll said he would file a written proffer of Kapelsohn's proposed testimony on Tuesday.

Torres is charged in the Aug. 29, 2013, death of Geer, who was shot once in the chest as he stood in the doorway of his Springfield townhouse. Police were called because Geer and his longtime partner were

arguing after breaking up, and when Torres and another officer arrived, Geer walked inside, showed the officers a holstered pistol, then placed it on the floor and put his hands on the top of the screen door.

After 42 minutes, with Geer speaking calmly to Officer Rodney Barnes but refusing to come outside, Torres suddenly fired one fatal round. Torres told investigators he saw Geer quickly jerk his hands to his waist and that Geer may have had another weapon. Barnes, three other nearby officers and two civilian witnesses all said Geer's hands were up when he was shot, and Morrogh reminded the judge Monday that Geer told Barnes, "I don't wanna get shot, 'cause I don't want to die today."

Kapelsohn, who has testified in about 60 trials on both gun and use-of-force issues, provided a factual recounting of the episode, though Morrogh said Kapelsohn made numerous factual errors. "He attributes knowledge to Torres he did not have at the time of the shooting," Morrogh said, such as Kapelsohn's claim in two places that "Torres also knew that Geer...had also threatened suicide." Torres never mentioned that to detectives in two separate interviews explaining why he shot Geer and apparently did not hear that information as it was radioed to officers on scene.

Morrogh said an expert may not try to bolster the testimony of other witnesses. Kapelsohn wrote that "As other officers noted...Geer was becoming increasingly agitated and angry." Kapelsohn did not note that Torres described Geer to investigators as "very calm." Kapelsohn also wrote that just because other officers did not perceive Geer as a threat "is not determinative of whether or not the officer who fired was justified in doing so."

Kapelsohn, who reviewed some of the physical evidence with the defense attorneys, also did his own experiments to see how quickly an officer could respond if Geer had another weapon or reached for his gun on the floor. Morrogh said those were unscientific and not admissible.

Carroll, Torres's lawyer, said a use-of-force expert "is going to be important because the tactics of what the officers did at the scene are going to be important...He has tremendous expertise and background in this area. In terms of aiding the jury, I think he will help."

Local Headlines newsletter
Daily headlines about the Washington region.

Sign up

Virginia law allows experts in criminal cases to testify about specialized knowledge a jury may not have, but does not allow experts to testify in areas that "invade the province of the jury on the ultimate issue of fact to

be decided." Morrogh noted that, "Police officers are not cloaked with some sort of aura that entitles them to disobey the law. They don't have a lower standard. They are citizens."

Smith ruled that Kapelsohn could not testify on how police officers are trained around the country, his personal anecdotes in other cases, related Supreme Court cases, the fact that different witnesses to an event can recall different things, or about the testimony of the other officers. "To allow that makes him the human polygraph," Smith said, "and we don't allow that."

The legal standard for whether a police shooting is justified was defined by the U.S. Supreme Court in the case of Graham v. Connor. The court ruled that a shooting is to be analyzed according to the circumstances as they appeared to the officer at the moment of the shooting, not in hindsight with much more information. If a shooting was "objectively reasonable" at that moment, it is legally justifiable. A Fairfax grand jury found probable cause to believe Torres did not meet that standard and indicted him for murder in August, though it did not hear from any defense witnesses.

Kapelsohn's report concluded that "if Officer Torres has accurately recounted what he perceived that caused him to fire, his use of deadly force in this incident was in keeping with his training...and in keeping with his agency's use of force policy." He said that while every officer at the scene may not have made the same decision as Torres, "my opinion nevertheless is that the decision he made was an objectively reasonable one, and such as other reasonable officers at the scene might have made under the same circumstances. Regrettably," Kapelsohn added, "Geer's own behavior, and his own refusal to come outside and away from his gun(s), played a major role in Officer Torres' use of force against him."

Smith said Kapelsohn could not offer that exact opinion, but he did not exclude him from testifying at all, as prosecutors asked. The judge said that after Carroll offered a written proffer of Kapelsohn's testimony, he would decide whether to hold another hearing. Otherwise, he scheduled jury selection to begin Monday in a trial expected to last into the following week.

Tom Jackman has been covering criminal justice for The Post since 1998, and now anchors the new "True Crime" blog. 🐦 Follow @TomJackmanWP

## The Post Recommends