UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA CHATMAN, as Special Administrator of the Estate of CEDRICK CHATMAN, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 13 CV 5697 |
| v. | ) ) | The Hon. Robert W. Gettleman |
| KEVIN FRY, | ) ) | Magistrate Judge Geraldine Soat Brown |
| Defendant. | ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTIONS *IN LIMINE* 1 – 10**

Defendant, Kevin Fry, by and through his undersigned attorneys, hereby submits the following response to Plaintiff's motions *in limine* 1–10. In support thereof, Defendant states as follows:

**1.      Chatman's Arrest History Is Relevant To Damages.**

Plaintiff acknowledges that the Seventh Circuit in *Cobige v City of Chicago*, 651 F. 3d 780, 784-85 (7th Cir. 2011), held that a decedent's arrests are relevant to damages in a wrongful death action. Not only was the decedent's prior record relevant to assess damages, but also the Seventh Circuit explained that the district court ruling barring admission of the decedents prior record could not be deemed harmless and ordered a new trial on damages. *Id.* The Seventh Circuit explained that "Illinois law makes surviving relatives' emotional loss and familial ties relevant to damages," *Id*., citing *Pleasance v. Chicago,* 396 Ill.App.3d 821, 827–28 (2009). The Court went on to say that "past conduct reduces the value if the loss, and because the past conduct is supposedly a predictor of what decent would do in the future." *Id.*

In this case, Plaintiff has identified five family member witnesses just on the subject of

1

damages: (1) Linda Chatman (mother), (2) Antonie Weeden (brother), (3) Stacy Jones (sister), (4) Marcellus Ellis (brother), and (5) Stephanie Jones (sister). These witnesses will all present a rosy picture of Cedrick's life in addition to sympathetic testimony about the loss they suffered and the damages the estate suffered as a result of his death. Without evidence of Chatman's juvenile arrest record, Defendant will be greatly prejudiced because plaintiff will be free to present an unrealistic view of Chatman's life to the jury and deprive the jury of essential information for the evaluation of damages.

Further, Defendants' expert, Dwight Steward, will testify that run-ins with law enforcement, such as arrests, have a documented economic impact on an individual's potential earnings capacity. In addition to his training and experience as an economist, Dr. Steward will rely upon research by Dr. Jeffrey Grogger, which, indicates that individuals who have an arrest record earn less than those who do not have an arrest record. He will also discuss Dr. Sam Allgood's 2007 paper, "The Impact of Youth Criminal Behavior on Adult Earnings" which explains the short-run effect of having been charged with a crime as a youth is an 18 percent decline in earnings; and six years later this earnings reduction increases to 21.5 percent. A criminal conviction when young has about the same short-run effect on earnings, but six years later having been convicted lowers earnings by almost 28 percent.

Despite his young age (Cedrick Chatman was only 17 when he died), Chatman regularly interacted with the criminal justice system in multiple states and contexts. (Defendant is filing a motion seeking leave to file Cedrick Chatman's juvenile arrest records under seal).

Chatman's mother testified that her son was detained in juvenile detention for two months. Dr. Steward will discuss a report from the Justice Policy Institute, which states "most incarcerated 9th graders return to school after incarceration but within a year of re-enrolling two-

2

thirds to three-fourths withdraw." Chatman had not completed high school at the time of his death and the research demonstrates that more likely than not he would have dropped out. Making it even less likely that Chatman would have matriculated is the fact that he was failing several classes and had below average grades.

As such, evidence of Chatman's prior arrests is relevant to how much loss the decedent's family and estate suffered by his death. *Cobige v City of Chicago*, 651 F. 3d 780, 784-85 (7th Cir. 2011). Plaintiff should not be allowed to present a one-sided depiction of the decedent without any opportunity for the Defendant to counter with evidence relevant to the decedent's "character and life prospects," especially in terms of how his life will be valued for purposes of calculating an award of damages. See *Cobige at *784*. Dr. Steward has quantified the economic damages based on his past criminal conduct. As for the loss to his family under Illinois law, on most if not all of these arrests, Plaintiff, Linda Chatman, his mother, was notified by the police about her son's conduct. (See Exhibit A).

Courts have relied on the Seventh Circuit's decision in *Cobige* in admitting prior arrest and drug use evidence for damages purposes.  Earlier in this case, Magistrate Judge Brown ruled that "decedent's records are relevant because his criminal history may affect the amount of damages his mother might recover because of his death," citing *Cobige*. See *Chatman v. City of Chicago, et al.*, No. 13 C 5697, 2014 WL 1813172, at *1 (N.D. Ill. May 5, 2014). See also *Parish v. City of Elkhart, Ind.*, 702 F.3d 997, 1003 (7th Cir. 2012)(new trial on damages ordered because the district court's rulings improperly limited the introduction of evidence critical to damages); *Goodman v. Babicz*, No. 09 C 5954, 2013 WL 146377, at *11 (N.D. Ill. Jan. 14, 2013)(evidence of plaintiff's heroin use was relevant to damages); *Wilson v. City of Chicago*, No. 07 CV 1682, 2013 WL 268468, at *3 (N.D. Ill. Jan. 24, 2013), aff'd, 758 F.3d 875 (7th Cir.

3

2014)(decedent's "drug and alcohol use was relevant to his future quality of life and the relationship he had with family members"); *Chatham v. Parkhill,* No. 11-CV-650-SCW, 2013 WL 5912154, at *1 (S.D. Ill. Oct. 31, 2013); *Estate of Gee ex rel. Beeman v. Bloomington Hosp.*, No. 1:06-CV-00094-TWP, 2012 WL 639517, at *4 (S.D. Ind. Feb. 27, 2012)("As it stands, Gee's criminal history, drug use, and history of some of his bad acts are fair game."); Even before the *Cobige* decision, courts have held that a decedent's "health, habits and the manner in which he led his life," including past drug use, are relevant to damages. *Egebergh v. Village of Mount Prospect*, No. 96 C 5863, at *1, 2004 WL 856437 (N.D. Ill. April 20, 2004). This Court should do the same.

Plaintiff's citations to *Jimenez v. City of Chicago*, 877 F. Supp. 2d 649 (N.D. Ill. 2012) and to an unpublished order in *Colyer v City of Chicago*, 12 CV 4855 (Jan. 26, 2015)[Dkt 260] are misplaced and do not justify a different holding from the binding precedent in *Cobige*. For starters, the district court in *Jiminez* did not exclude all of the plaintiff's juvenile arrests. *Jimenez*, 877 F. Supp. 2d at 669. In addition, the *Jimenez* case is distinguishable because it was not a wrongful death case as was the case in *Cobige*. In *Jimenez*, the plaintiff brought due process and malicious prosecution claims against a detective and sought damages for what he alleged to be a 16-year wrongful conviction. As such, the juvenile arrests occurred no less than 16 years before the civil trial and the district court limited the scope of the evidence based upon Fed. R. Evid. 403. *Id.*

Judge Chang's unpublished order in *Colyer* is also no reason to dispense with the Seventh Circuit's holding in *Cobige*. First, to the extent that *Colyer* is inconsistent with *Cobige*, it is *Cobige* that is binding upon this Court. Second, even under Judge Chang's explanation of the holding in *Cobige*, the Rule 403 balance would still militate in favor of the admission of

4

Chatman's prior arrests into evidence. Judge Chang distinguished *Colyer* from *Cobige* because the decedent's prior convictions in *Colyer* had "no obvious bearing on what [the decedent] might have done with his life. The later of the two convictions was five years old when [the decedent] died; the earlier ten." In this case, there was not the significant gap in time that the court found persuasive in *Colyer*. (Again, Defendant is seeking leave of court to file Cedrick Chatman's arrest records under seal for the court's review).

Like the decedent in *Cobige* and unlike the decedent in *Colyer*, Chatman's lengthy criminal history is a clear indicator of how Chatman would likely have continued to live his life. The strong likelihood of Chatman's extensive juvenile criminal history substantially impacting his future is supported by the unrebutted expert testimony of economist Dwight Steward. In fact, Chatman committed a serious felony—carjacking and robbery—shortly before he was shot. The fact that he committed these crimes is not really up for debate. Chatman's robbery accomplices, Martell Odum and Akeem Clarke, were charged with Felony murder as a result of their conduct, which lead to Chatman's death. Odum and Clarke have since both plead guilty to their actions that day, putting to rest any suggestion Chatman was not a participant in a car jacking and robbery just prior to his death.

Of further legal significance is Plaintiff's own knowledge of Mr. Chatman's extensive criminal conduct. See *Cobige*, 651 F.3d 780, 785 (7th Cir.2011)("When the law makes damages depend on matters such as the emotional tie between mother and son, the defendant is entitled to show that the decedent's character flaws undermined the quality of advice and support that she could have supplied."

2. **No Objection**

5

### 3. Plaintiff's Prior Drug Use Is Relevant To Damages.

According to Chatman's juvenile records, he smoked marijuana occasionally and "that he smokes about 2 blunts a day if it is around." Chatman's sister Stephanie states that Chatman used marijuana daily. As such, there is nothing speculative about Chatman's drug use, as Plaintiff's motion suggests. Documents and live witnesses support the evidence that Chatman was a regular marijuana user. Similar to *Cobige,* Defendant seeks to present evidence of the decedent's criminal history and daily drug use in order to rebut evidence regarding damages. (See discussion above). The fact that it is "only marijuana" does not make the drug use benign. In Illinois, marijuana is still an illegal drug and a decedent's habitual use is relevant to the issue of damages. *Chatham v. Parkhill,* No. 11-CV-650-SCW, 2013 WL 5912154, at *1 (S.D. Ill. Oct. 31, 2013)(Based on *Cobige,* "the Court will allow evidence of decedent's conviction, arrest record, and usage of marijuana which has been described as being daily use."); *Wilson v. City of Chicago*, No. 07 CV 1682, 2013 WL 268468, at *3 (N.D. Ill. Jan. 24, 2013), aff'd, 758 F.3d 875 (7th Cir. 2014)("Under Illinois law, 'surviving relatives' emotional loss and familial ties' are relevant when calculating damages in a wrongful death claim. Thus, evidence regarding the decedent's prior drug use was not improper propensity evidence; rather, it was 'relevant to how much loss [the decedent's] estate and son suffered by her death.'")

### 4. Agreed – No Bolstering Of Officer Fry Or Any Other Police Officer.

Plaintiff seeks an order *in limine* prohibiting bolstering the credibility of Defendant Fry or any other police officer by not introducing any medals, awards or commendations the officers may have received. Plaintiff does not want a police officer to even show up in a uniform lest that prejudice the plaintiff's side. Defendant agrees that nothing about his work history – either positive or negative – should have any place at this trial. Defendant agrees to this motion on the

6

condition that Plaintiff does not seek to introduce any evidence of complaints or discipline against Fry or any other police officer.

5. **No Objection**

6. **No Objection**

7. **Defendant Fry Has No Objection To Introduction Of Indemnity If He Opens The Door And Testifies About The Undue Hardship Punitive Damages Will Cause.**

8. **No Objection**

9. **Prior Incidents of Gun Violence Relevant To Damages.**

Cedrick Chatman was involved in at least two shooting incidents. In one incident in 2011, his residence was a target of a shooting in which his sister Stacey was injured. In another instance in 2010, Chatman was shot in the leg. Both of these incidents are relevant to damages. Defendant agrees there is no medical link between these shootings and the cause of his death, but the fact that Chatman was involved in multiple shooting incidents sheds light on the type of lifestyle he lived. As far as Plaintiff's concern for a minitrial, Defendant would agree to a stipulation identifying what facts the Plaintiff would want to elicit to explain the circumstances of the shootings to avoid the prejudice she is worried about.

10. **Details Of The Incident at 7602 S. Jeffery Are Relevant To Motive and Damages.**

To be clear, Defendant Fry knew about the car jacking and that it related to robbery – this information was conveyed to Officer Fry and his partner over the radio. These facts were part of Officer Fry's calculus when he decided to fire his gun. Although, *Sherrod* and its progeny limit introduction of evidence to what Officer Fry knew at the time he fired his weapon, that does not mean that additional details concerning the carjacking and theft, unknown to Fry, are therefore automatically excluded from the case. The expanded details of what occurred during the

carjacking and theft are admissible to demonstrate: (1) Cedrick Chatman's motive in the way he acted prior to the shooting and is also (2) relevant for damages, to explain the type of life Chatman was leading just hours before his death. As explained above, Odum and Clarke have both plead guilty to their actions with Chatman prior to his death. Admitting this evidence explains the motive Chatman had in his attempt to flee from the police and act the way he did.

More importantly, the details of what Chatman was doing just prior to his death are relevant to show the jury the type of life Chatman was leading and where his life was heading. In *Common v. City of Chicago,* 661 F.3d 940, 945 (7th Cir. 2011), the Seventh Circuit admitted evidence that the decedent possessed illegal drugs at the time he was shot since "by hiding them in his mouth, for example, [it] made it more likely that he would initially turn from the officer and hide his hands as he took the drugs from his pockets and placed them in his mouth. It also made it more likely that Smith might engage in a flight or fight response—either turning away from the police, as he seemed to have done initially." The court also noted that such evidence of prior unlawful conduct could be used to rebut the "plaintiffs' argument that [the decedent] exited the store and immediately complied with the officer's direction to put his hands in the air." *Id.* at 947. Here, Plaintiff's complaint indicates that Chatman surrendered when confronted by the police. The details and plea of guilt by his accomplices of what Chatman was doing just prior to being shot, namely carjacking someone and committing a robbery, explain the motive of Chatman not to surrender to the police as testified to by Officers Toth and Fry.

The details of the carjacking and robbery are also highly relevant to damages. Chatman's robbery accomplices, Odum and Akeeme, have both plead guilty for the conduct they participated in with Chatman on the day he was shot and can testify about what Chatman was doing the last day of his life. These facts are relevant in evaluating the type of life Chatman was

8

living at the time of his death and the choices he was making with his life. The actions of Chatman on this day are the best indicator for how he was living his life and how he would have continued to act had he remained alive.

                                                                  Respectfully Submitted,

                                                                  /s/ Avi T. Kamionski
                                                                  Avi T. Kamionski

Andrew M. Hale
Avi T. Kamionski
Shneur Nathan
HALE LAW LLC
53 West Jackson, Suite 330
Chicago, Illinois 60604
(312) 341-9646

**CERTIFICATE OF SERVICE**

      I, Avi T, Kamionski, an attorney, hereby certify that I filed the attached document with the Court's CM/ECF system on the date stamped on the above margin, which sent electronic copies of the same to all counsel of record.