## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LINDA CHATMAN, as Special | ) | |
| Administrator of the Estate of | ) | |
| CEDRICK CHATMAN, deceased, | ) | |
| | ) | Case No. 13 CV 5697 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | The Hon. Robert W. Gettleman |
| | ) | |
| KEVIN FRY, | ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### MOTION TO BAR EMANUEL KAPELSOHN

Defendant, Kevin Fry, by and through his undersigned attorneys, hereby submits the following response to Plaintiff's Motion To Bar Emanuel Kapelsohn. In Support thereof, Defendant states as follows:

### INTRODUCTION

Cedrick Chatman was stopped by Officers Lou Toth and Kevin Fry on January 7, 2013, in a Silver Dodge Charger which Chatman had carjacked minutes earlier. Based on the information about the crime known to the Officers from the police dispatcher and their experience, the Officers believed that the carjacking likely involved a weapon. When the officers approached Mr. Chatman, he fled with a dark object in his hand that the Officers suspected was a gun.

Despite repeated commands from the Officers to Mr. Chatman to stop and drop the gun, he continued to run. According to the unrebutted expert report of forensic pathologist Dr. Brian Peterson, Plaintiff suffered a single gunshot wound that entered and passed through his arm and lodged into his chest. Upon subsequent investigation, it was learned that Mr. Chatman was never

armed with a gun; rather, he was holding an iPhone box in his hand. The tragic result of this event is that Mr. Chatman was shot and killed. However, the jury in this case will be tasked with assessing whether Officer Fry's decision to fire his gun was reasonable under the circumstances without the benefit of 20/20 hindsight. Emanuel Kapelsohn is a use of force expert that regularly trains police officers throughout the country regarding use of force. (Emanuel Kapelsohn Report & CV Dated Apr. 29, 2015, available at Dkt. # 216-1). His specialized knowledge and skill, as fully articulated in his expert report, will assist the jury in making its ultimate determination regarding the reasonableness or unreasonableness of Officer Fry's decision to fire.

The following opinions from Mr. Kapelsohn's report, summarized for the sake of clarity, will assist the trier of fact in assessing the reasonableness of Officer Fry's actions:

- Officers are trained to judge the dangerousness of a situation based on the totality of the circumstances, not just whether they actually observe an immediate, deadly threat (Kapelsohn Report at p. 7);

- Officers are trained based on human dynamics and force science concepts that it takes time to react to a deadly threat ("action is faster than reaction") and therefore officers must react to "imminent threats" not just "immediate threats" (Kapelsohn Report at pp. 7-8, 9-10);

- Officers are trained to aim and fire their guns at a subject's center mass rather than firing warning shots or attempting to fire at non-deadly areas because of factors such as stress and low hit ratios (Kapelsohn Report at p. 11);

- The bullet and wound path are consistent with Chatman turning toward Officer Fry at the time the bullet was fired (Kapelsohn Report at p. 11); and

- The object in Chatman's hand was similar in size to numerous commonly used handguns (Kapelsohn Report at pp. 8-9).

As demonstrated below, Mr. Kapelsohn is qualified to provide the above opinions and his methodology is reliable. Finally, any reliance by Plaintiff on the affidavit of William Harmening should be rejected under Fed. R. Civ. P. 26 and 37 because Mr. Harmening was never disclosed as a witness in this case.

## LEGAL STANDARD

"The admissibility of expert testimony and opinions is governed by Federal Rule of Evidence 702 and the standard articulated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Miller UK Ltd. V. Caterpillar, Inc.*, No. 10-3770, 2015 U.S. Dist. LEXIS 147843, at *2-3(N.D. Ill. Nov. 1, 2015). Specifically, Rule 702 and *Daubert* "require the district court to determine whether proposed expert testimony is both relevant and reliable." *Id.*, *citing Higgins v. Koch Dev. Corp.*, 794 F. 3d 697, 704 (7th Cir. 2015).

To determine whether an expert's proposed testimony is reliable, the court is granted broad latitude; and, with respect to non-scientists, the relevant inquiry is whether the expert has the requisite expertise in a given field. *See Id.* at *9. Further, despite claims that an opposing party's expert's opinion is purely subjective, testimony that reflects an expert's "extensive experience and training," can be properly admitted. *Id.* at 10. Additionally, a key component of admissibility under Federal Rule of Evidence 702 is whether "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. ..." Fed. R. Evid. 702(a).

## ARGUMENT

### I. The Opinions Proffered by Mr. Kapelsohn Will Assist the Trier of Fact, Are Reliable, and Are Of The Type He is Qualified to Make.

While Plaintiff's *Daubert* motion is not a model of clarity, it appears to argue that Mr. Kapelsohn should not be permitted to testify because he is not qualified, his methodology is not reliable, and his opinions will not assist the jury. Contrary to Plaintiff's generalized assertions, Kapelsohn is abundantly qualified to testify as an expert on the use of force and firearms topics disclosed in his report. This is established by Mr. Kapelsohn's extensive CV, his publications in these areas, his teaching at state and federal law enforcement officers on these concepts

throughout the country, and by the hundreds of courts that have qualified him as an expert. It appears that Plaintiff's challenge to Mr. Kapelsohn's qualifications relate only to his opinions on bullet trajectory and concepts of force science; therefore, these topics will be addressed separately in Section (I)(B) below.

**A.  The Opinions Proffered Will Assist The Trier of Fact.**

The average juror does not know about law enforcement use of force training, bullet trajectory, or even about firearms in general. Plaintiff will argue at trial that even assuming Officer Fry's account of the shooting is accurate; he was not authorized to shoot. Such an argument is contrary to accepted national police standards and precisely why an expert like Mr. Kapelsohn is necessary to explain to the jury the type of training and standards that exist that permit officers to shoot. Several areas of Kapelsohn's report speak specifically to his experience as a firearms and use of force instructor.

The opinions Mr. Kapelsohn offers about how police officers are trained and must decide to shoot before it is too late are highly relevant to the issue in this case and are beyond the ken of an average juror. Without the expert knowledge of Mr. Kapelsohn, an average juror might well wrongly conclude that a police officer must wait until a gun is pointed at him before firing. Mr. Kapelsohn, as a firearms expert and use of force trainer for law enforcement around the country, will be able to explain that officers are trained that "action is faster than reaction" and, therefore, they cannot necessarily wait for a deadly threat to become "immediate" before deciding to shoot.

Similarly, Kapelsohn should be permitted to testify that, assuming without concluding that the factual version described by Officer Fry is true, the use of force would be consistent with nationally accepted standards in police training. (Kapelson Report, pp. 5-7, 9-11.) Such

testimony, both regarding police standards generally, and their application to Officer Fry, will be helpful to the jury in determining whether Fry's use of force was objectively reasonable.

This opinion is consistent with "[a] long tradition in American courts permit an expert to testify in the form of a 'hypothetical question,' where the expert assumes the truth of the factual predicates and then offers testimony based on those assumptions." *Williams v. Illinois*, 132 S.Ct. 2221, 2223 (2012). As a result, Kapelsohn has properly opined, and may do so at trial, that accepting Officer Fry's testimony as true, his actions were consistent with national police practices and guidelines regarding the use of force.

Plaintiff points to *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006) and argues that the case stands for the broad proposition that a use of force expert is not admissible because it is the jury's role to assess reasonableness. However, in *Thompson*, no less than four use of force experts were properly introduced into evidence. *Id.* at 450-451. Moreover, *Thompson* is easily distinguished because it involved a chokehold and did not involve a firearm. The Seventh Circuit's ruling, upon which Plaintiff relies, merely affirmed the district court's exercise of discretion under Fed. R. Evid. 403 to exclude the opinion of an investigator from the police department's Office of Professional Standards that the use of force was not justified. This ruling would be akin to excluding the opinion of IPRA investigator Lorenzo Davis in this case.

Regarding the bullet trajectory opinions, Defendant addresses Mr. Kapelsohn's expertise in section I (B)(2) below. However, the average juror certainly is not an expert in ballistics or bullet trajectory analysis. The average juror knows almost as little regarding the topic of the size and characteristics of common hand-held firearms. Yet these topics are essential for the jury to assess the objective circumstances presented to Officer Fry at the time he decided to fire his

weapon. As such, Mr. Kapelsohn's opinions will assist the trier of fact as it comes to its conclusion about whether or not the level of force used by Kevin Fry was reasonable.

**B.  Mr. Kapelsohn Is Qualified To Testify About Bullet Trajectory and Officer Training Regarding Reaction Time and His Methodology On These Topics Is Reliable.**

Plaintiff appears to challenge only a very small subset of Mr. Kapelsohn's opinions based upon his qualifications and methodology. It is beyond legitimate dispute that Mr. Kapelsohn is qualified as an expert on the topics of firearms and police use of force training. Indeed, Mr. Kapelsohn regularly teaches these topics to police officers across the country and he has been admitted as an expert on hundreds of occasions. Nevertheless, Plaintiff appears to argue that Kapelsohn is not qualified to opine regarding bullet trajectory or concepts of Force Science.

As for Mr. Kapelsohn's methodology, Plaintiff does not appear to challenge the methodology with respect to the state of use of force training in the United States today. This would include Mr. Kapelsohn's opinions about how officers are trained that they cannot react as fast as a subject can act and therefore must address imminent threats as well as immediate threats. It would also include Mr. Kapelsohn's opinion about how law enforcement officers are trained to assess use of force encounters with the overall context of the situation in mind. Of course these opinions would be well within Mr. Kapelsohn's extensive teaching experience, written publications, and long record of expert testimony. However, like the qualifications challenge, Plaintiff challenge Mr. Kapelsohn on his methodology regarding officer reaction time and bullet trajectory.

**1)  Officer Training And Factors Relating to Reaction Time.**

Plaintiff misconstrues the nature of Mr. Kapelsohn's proffered testimony on the topics of "action is faster than reaction" and the differences between immediate and imminent threats. The

point is that police officers in the United States, including Officer Fry, are trained that they must account for the fact that "action is faster than reaction" when they are confronted with a situation that they believe to warrant the use of deadly force. Officers like Officer Fry are trained that it will likely be too late if they allow a suspect to completely turn in their direction with a suspected gun pointed at them. This training is highly relevant to the jury's assessment of the reasonableness of Officer Fry's actions and, as a use of force expert, force science expert, and police trainer, Mr. Kappelsohn is qualified to opine on this topic.

While Mr. Kapelsohn references his expertise in "force science" and articles on the topic in a few areas of his report, the larger point is that Officers in the United States are trained in the use of force to be active rather than reactive because of these concepts.  These concepts bear out in peer reviewed lab studies that Mr. Kapelsohn cites in his report, follow basic logic, and could be demonstrated for the jury. These points (e.g, it takes 0.25 seconds to fire a gun) are entirely provable and not hypothetical. In addition, Mr. Kapelsohn happens to be certified by the Force Science Institute. This certificate itself means that Kapelsohn "has been trained to recognize and articulate important psychological, biological and physical factors that influence human behavior and memory in force encounters and pursuit situations." See http://www.forcescience.org/certification.html. However, Mr. Kapelsohn's certification by Force Science Institute represents only a tiny fraction of his expertise in this area.

Mr. Kapelsohn has been testifying in courts on force science issues since 1984. (Kapelsohn Report, p. 2). He as conducted his own research on the topic, interviewed many dozens of officers who have been involved in shootings and other high-stress confrontations, and taught it at the university level.

Plaintiff has read some articles online which she believes serves as basis to discredit the Force Science Institute and their education of action and reaction time. But this is a recognized area of science in police shooting cases and has been admitted time and time again. *See Tubar v. Clift*, No. 05-1154-JCC, 2009 U.S. Dist. LEXIS 44201, at *27 (W.D. Wash. May 12, 2009) (allowing Force Science Institute's founder, Bill Lewinski, to testify regarding performance and timing factor's in officer's firing based on his expertise in human performance in lethal force encounters); *see also, State v. McDowell*, 215 N.C. App. 184, 189 (Sept. 6, 2011); *Lyons v. City of Conway*, No. 04-2303-JTR, 2008 U.S. Dist. LEXIS 46758, at *20 (E.D. Ark. Jun. 16, 2008).

Plaintiff's arguments on force science do not serve as a basis to challenge the admissibility of Kapelsohn testimony, but rather go to the weight and perhaps could be proper areas of cross examination. *See Loeffel Steel Prods. v. Delta Brands*, 372 F.Supp.2d 1104, 1119 (N.D. Ill. Jun. 9, 2005)(challenges to the "bases and sources" of an expert's opinion go to weight, not admissibility).[1]

In any event, the opinions that Mr. Kapelsohn offers regarding how law enforcement officers are trained to be active rather than reactive and the reasons therefore are well within Mr. Kapelsohn's expert knowledge, training and experience as a regular trainer for law enforcement across the country on the topic of use of force.

### 2) Bullet Trajectory

Plaintiff asserts that Kapelsohn is not qualified to opine on the trajectory of the bullet that traveled into and through Chatman's body. (Pl.'s Mot., p. 6.). That's simply not the case. Kapelsohn has extensive training in ballistics, bullet trajectories, forensics, and has been

---

[1] Plaintiff also points to the affidavit of a previously undisclosed expert in attempt to discredit some of the science that Mr. Kapelsohn relies upon. As argued in Section II below, this affidavit should be completely disregarded. Any claim that the science is not peer reviewed is simply wrong. See http://www.forcescience.org/articles.html.

qualified as an expert in these areas by other courts. (Dkt. #216, Exhibit 1, pp. 16-18 (file-stamped page), "CV".) Further, Kapelsohn has received extensive training which make him particularly competent to opine on the trajectory of the bullet that struck Chatman and the position of Chatman's body when he was struck.

Kapelsohn is a certified crime scene reconstructionist, and has received specific training in shooting scene reconstruction. See CV, pp. 11, 13. Kapelsohn has also had extensive training in gunshot wounds and ballistics, including seminars on gunshot wounds, wound ballistics, tactical anatomy, and tactical treatment of gunshot wounds, to name a few. *See* CV pp 9, 11, 13. The fact that Mr. Kapelsohn is not a forensic pathologist is of no import. He properly relied upon the autopsy report that described the wound path through Mr. Chatman's torso as "right to left and upward." (Kapelsohn Report p. 12).

Furthermore, Kapelsohn has years of experience in firearms training, and was a trainer himself in a course that involved intimate knowledge of trajectories and ballistics, including training police counter snipers and training police rifle instructors. *See generally,* CV. Additionally, in his role as technical editor of *Police Marksman* magazine, Kapelsohn tested precision rifles, handguns of all sorts, ammunition, telescopic sights and the like, including chronographing of ammunition, accuracy testing, and testing of bullet performance, among other things. *See* CV, p. 2. While the bases of Mr. Kapelsohn's bullet trajectory opinions are fully set forth in his expert report, (Kapelsohn Report pp. 11-12), nowhere in Plaintiff's motion does it demonstrate that Mr. Kapelson's methodology on this matter was deficient. (See Pl.'s Daubert Motion, Dkt. # 216 at p. 12).

Based on the foregoing, it is clear that Kapelsohn has the requisite qualifications to opine that the bullet entry point and path are consistent with Officer Fry's testimony as well as the

videotape evidence. "Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Tuf Racing Prods. Inc., v. American Suzuki Motor Corp.*, 223 F.3d 585, 595 (7th Cir. 2000). Kapelsohn's testimony on the direction of fire, the number of shots fired and the trajectory of the bullet will be helpful to the jury to determine whether the number of shots Officer Fry fired was reasonable, which ultimately will be a factor in determining the overall reasonableness of Fry's actions.

### C. Kapelsohn Can Properly Opine That The Object In Chatman's Hand Was Similar In Size To Many Firearms.

Officer Fry will testify that he saw an object in Chatman's hand and believed that this object was a firearm and that is why he fired at Chatman. Kapelsohn visited the Evidence Recovery Property Section ("ERPS") of the Chicago Police Department and measured the size of the object (iPhone box) that Chatman was holding at the time he was shot by Officer Fry. The iPhone box measured 5-5/8" long by 3-1/8" high by 1-9/16. (Kapelson Report, p. 8). Simplified by rounding, this is about 5.6" x 3.1" x 1.5." (*Id.*). Kapelsohn will testify that this iPhone box is roughly the same size as many small handguns, for example:

| | |
|---|---|
| iPhone 5 box | 5.6" x 3.1" x 1.5" |
| Ruger LCP .380 | 5.1" x 3.6" x .82" |
| Ruger LC9 9mm | 6.0" x 4.5" x .90" |
| Glock 42 .380 | 5.9" x 4.1" x .94" |
| KelTec P11 9mm | 5.6" x 4.3" x 1.0" |
| KelTec P3AT .380 | 5.2" x 3.5" x .77" |
| KelTec PF9 9mm | 5.85" x 4.3" x .88" |
| Kahr PM9 9mm | 5.42" x 4.0" x .90" |
| Colt Mustang .380 | 5.5" x 3.98" x. 1.0" |
| Sig Sauer P238 .380 | 5.5" x 3.9" x 1.1" |

Kapelsohn's expertise in firearms qualifies him to opine on these guns and their sizes. He holds several "Expert" ratings from the NRA (Rifle Expert, Light Rifle Expert, handgun Distinguished Expert, etc.) and from the American Pistol Institute (Handgun Expert, Rifle

Expert, Shotgun Expert). This is precisely the type of specialized knowledge that the average juror may not know. The average member of the jury may never have held or seen a handgun in person, and may have no frame of reference for a handgun's size. Kapelsohn is able, based on his experience as a firearms instructor and expert marksman, to use his specialized knowledge to shed light on the similarities between the size and shape of an iPhone box, and the size and shape of various handguns. Such information will be extremely useful to the jury in evaluating Officer Fry's testimony regarding the object in Chatman's hand, and Officer Fry's reasonableness in mistaking an iPhone box for a handgun.

## II. Plaintiff's Late Disclosure Of Her Rebuttal Expert Is Untimely And Must Be Stricken As It Will Unduly Prejudice Defendant.

On February 4, 2015, Defendants moved for an extension of time to disclose their experts. (Dkt. # 81). This Court granted the extension until April 30, 2015. At that time, Plaintiff's counsel had gone on record that they would not be offering any expert opinions in this matter. (Dkt. #77). At the time of Defendants' motion, Plaintiff did not seek a modified schedule for rebuttal experts. On May 14, 2015, Plaintiff was ordered to depose Defendants' expert by July 14, 2015, and then by August 21, 2015. (Dkt. # 141). Plaintiff never deposed Officer Fry's expert, Mr. Kapelsohn. Now, on the eve of trial, Plaintiff has moved, in *limine*, to bar Defendant's expert. In support of Plaintiff's motion, she includes an affidavit of William Harmening, ostensibly not as expert testimony, but only for the purpose of the motion *in limine* itself, the "Daubert motion." Plaintiff's explanation of her late disclosed expert, while creative, is a thinly veiled attempt to make an end-run around this Court's expert discovery schedule.[2] Plaintiff's use of Harmening's affidavit, and any argument therefrom, must be stricken.

---

[2] Indeed, it seems that Plaintiff has tried to explain away her failure to depose Kapelsohn by citing that it was too costly. (Pl.'s Mot., fn 1.) Given the motion practice and the court orders regarding Plaintiff's actions surrounding Kapelsohn's deposition (Dkt. # 138, 140, 141), her current position is neither legally justified, nor well taken.

## A.  Mr. Harmening is a Rebuttal Expert.

Parties must follow the expert disclosure deadlines set by the court. *Scaggs v. Consolidated Rail Corp.,* 6 F.3d 1290, 1295-96 (7th Cir.1993)(affirming the district court's exclusion of an expert disclosed two days before a deadline). If the court has set no deadlines, expert reports are due ninety (90) days before trial; or, if the evidence is being offered solely to rebut another party's expert, it must be disclosed within thirty (30) days of the other party's disclosure.  *See* Fed. R. Civ. P. 26(A)(2)(D). Consistent with this Court's order, Plaintiff was served with Kapelsohn's report on April 29, 2015.  Thus, in the absence of a court order, Plaintiff's expert, who is clearly a rebuttal expert, should have been disclosed by May 29, 2015.

Plaintiff's claim that her expert should not be stricken (Pl.'s *Daubert* Mot., fn. 1) because Harmening's affidavit  is only offered for the purpose of excluding Kapelsohn under *Daubert*, is a distinction without difference. Plaintiff cannot rename a rebuttal expert as a "non-trial expert" and avoid a motion to strike. Indeed, Harmening's affidavit specifically challenges Kapelsohn's research, his data, his conclusions and his qualifications. (Pl.'s *Daubert* Mot., Ex. 2). Each challenge is clearly intended to rebut the contents of Defendant's expert report.

While Plaintiff may claim that she is not violating the expert disclosure rules set out by Rule 26 because Harmening will not be a trial witness, her conclusion is unjustified. Harmening's affidavit, presented for the first time as part of a motion *in limine*, is no different than his live testimony at trial attempting to discredit Kapelsohn.  If the Court allowed this tactic, every party (or lawyer) that failed to timely disclose an expert, would use the guise of a motion to bar as a vehicle to backdoor in testimony. In fact, Plaintiff's proposed use of Harmening's affidavit at this stage is much more damaging to Defendant's than his testimony at trial---

Plaintiff is attempting not to simply rebut Defendant's expert testimony, but to exclude it completely.

**B. The Untimely Disclosure Of Mr. Harmening As A Rebuttal Witness Was Neither Justified Nor Harmless, Therefore, Any Opinion of Harmening Must Be Stricken.**

Rule 37 dictates that if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). The party responsible for the late disclosure has the burden of demonstrating that the late disclosure was justified or harmless. *Nutrasweet Co. v. X-L Eng'g Co.,* 227 F.3d 776, 786 (7th Cir. 2000). Plaintiff can do neither in this case and, thus, Harmening's affidavit must be stricken.

Here, Plaintiff has used a previously undisclosed witness in support of a motion, and in a manner that is tantamount to rebuttal at trial. At no point prior did Plaintiff ever indicate in any manner that she intended to challenge Kapelsohn's report in any way. In fact, to the contrary, Plaintiff has repeatedly asserted that she did not intend to call an expert, or rely in expert testimony in any way. Specifically, on January 20 and 27, 2015, Plaintiff informed the Court she "did not intend to call any expert testimony." (*See* Dkt. # 71, 77). Defendant Fry has thus had every reason to rely on Plaintiff's repeated assertion and plan his trial strategy accordingly, with the inclusion of Kapelsohn's testimony.

Moreover, the untimely disclosure of Mr. Harmening's affidavit deprives defendant (and the Court) from assessing the reliability of his assertions through robust discovery and deposition testimony. It is fundamentally unfair and poses an unacceptable risk of unreliability for the Court to allow Plaintiff to sandbag defendant with an expert affidavit first disclosed in a motion in

*limine*. This is especially true given that responses to motions in *limine* were due just one week later. This is precisely why there is a set expert discovery period.  Once that time ends, no party should be forced to vet out a new expert in response to a *Daubert* motion – especially in one week.  *Musser v. Gentiva Health Services*, 356 F.3d 751, 758-759 (7th Cir. 2004)(affirming exclusion of rebuttal expert report attached to response to summary judgment motion because movant did not have a meaningful opportunity to address it and should not be saddled with additional costs and delay for based on a party's failure to comply with discovery rules).

## CONCLUSION

Emanuel Kapelsohn is use of force expert with a wealth of experience. He provided a detailed Rule 26 expert report with the bases for his conclusions fully explained. Nothing in Plaintiff's motion justifies barring Mr. Kapelsohn or any portion of his testimony. To the extent that Plaintiff has any argument with Mr. Kapelsohn's opinions, they go to the weight a jury should place on the testimony and not the issue of admissibility.

Respectfully Submitted,

/s/ Avi T. Kamionski
Avi T. Kamionski

Andrew M. Hale
Avi T. Kamionski
Shneur Nathan
Julie K. Bisbee
HALE LAW LLC
53 W. Jackson Blvd., Suite 330
Chicago, IL  60604
(312) 341-9646

**CERTIFICATE OF SERVICE**

I, Avi T. Kamionski, an attorney, hereby certify that I filed the attached document with the Court's CM/ECF system on the date stamped on the above margin, which sent electronic copies of the same to all counsel of record.

Respectfully Submitted,

/s/ Avi T. Kamionski
Avi T. Kamionski